*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0140p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

AMADOU LAMINE SARR,

*Petitioner,*

*v.*

No. 05-4558

ALBERTO R. GONZALES, United States Attorney
General,

*Respondent.*

>

---

On Petition for Review of an Order
of the Board of Immigration Appeals.
No. A72 416 748.

Argued: January 23, 2007

Decided and Filed: April 19, 2007

Before: DAUGHTREY and COOK, Circuit Judges; WEBER, District Judge.[*]

---

## COUNSEL

**ARGUED:** Scott A. Keillor, Ypsilanti, Michigan, for Petitioner. R. Alexander Goring, UNITED STATES DEPARTMENT OF JUSTICE, OFFICE OF IMMIGRATION LITIGATION, Washington, D.C., for Respondent. **ON BRIEF:** Scott A. Keillor, Ypsilanti, Michigan, for Petitioner. R. Alexander Goring, Michelle Gorden Latour, UNITED STATES DEPARTMENT OF JUSTICE, OFFICE OF IMMIGRATION LITIGATION, Washington, D.C., for Respondent.

---

## OPINION

---

MARTHA CRAIG DAUGHTREY, Circuit Judge. The petitioner, Amadou Sarr,[1] seeks review of a ruling of the Board of Immigration Appeals (Board) that affirmed an immigration judge's decision denying Sarr's requests for asylum, withholding of removal, and relief pursuant to the United Nations Convention Against Torture. Sarr contends that he proved by sufficient evidence

---

[*]The Honorable Herman J. Weber, United States District Judge for the Southern District of Ohio, sitting by designation.

[1]At various places in the record, the petitioner's surname is spelled "Saar," "Saarr," and "Sarr." Because documents signed by the petitioner consistently use the spelling "Sarr," we will do likewise.

that he had suffered past persecution in his native Senegal and that country conditions have not changed sufficiently to alleviate the threat of future persecution if he is returned to Senegal. Sarr also contends on appeal that he was denied due process by the immigration judge's adverse credibility finding and by the Board's refusal to adjudicate certain of his requests for relief. Because we conclude that Sarr has failed to satisfy the heavy burden imposed upon him to overturn the administrative decisions in question, we must deny Sarr's petition for review relating to those determinations. In addition, because there is no basis upon which to conclude that the petitioner has been denied procedural due process, we cannot grant review on constitutional grounds, even though we reject the government's argument that the Board's decision in *In re Velarde-Pacheco*, 23 I. & N. Dec. 253 (BIA 2002), confers upon the government the power single-handedly to prevent the Board's consideration of an otherwise meritorious motion to reopen or remand a request for adjustment of status.

## *FACTUAL AND PROCEDURAL BACKGROUND*

After studying English at a university in Senegal, Sarr entered the United States in 1991 on a one-year visa as an "exchange scholar." While the visa was still valid, he filed an application for asylum, in which he indicated that he had been politically active in an opposition party in Senegal, resulting in his arrest and "mistreatment" following the 1988 general election. He also indicated that he had been "detained" for participating in "a peaceful march protesting the results of [that] election," but he did not allege that he had been physically harmed in any way. Summarizing his reasons for seeking refugee status, Sarr wrote, "I believe in democracy and I think that people should have the right to express their political opinion regardless of race, religion, etc. . . . ."

Not surprisingly, this application was not deemed sufficient to establish grounds for a grant of asylum, which was denied in 1998. However, Sarr filed a second application for asylum in 1999, and this time he detailed a series of events that, if established to the satisfaction of the immigration court, would arguably have made out a case of past persecution under the applicable statute, 8 U.S.C. § 1101(a)(42)(A). He also testified in support of his application that he had been a member of the Senegalese Democratic Party's youth division for 12 years, from 1979 to 1991, and had participated in marches and other peaceful demonstrations against the ruling Socialist Party. Even though he was employed as a high school teacher by the Senegalese government for much of that time, Sarr claimed to have suffered serious retribution for the expression of his political beliefs. According to his testimony, Sarr was arrested numerous times as a result of his opposition activities, beginning in February 1988, when he was arrested, jailed for one week, and beaten with a leather whip called a "gourdin" for writing a newspaper article critical of the Socialist rulers. He told the immigration judge that in March 1988 he was arrested again, this time for demonstrating peacefully in the capital city of Dakar, that he was jailed for seven to ten days, and beaten, whipped, and kicked by his captors "[a]lmost every day," and that he sought medical attention after his release from confinement.

The petitioner further testified that he was arrested again the following month, on April 4, 1988, Senegal's independence day, at another peaceful demonstration. He claimed that he was jailed for "one week or two weeks" on that occasion and that he was beaten by the police "with the back of a rifle." Similar arrests and incarcerations allegedly occurred on December 24, 1988, in March 1989, and in December 1990. The last arrest also involved various Democratic Party leaders, including Abdoulaye Wade, the current president of Senegal, and Idrissa Seck, the country's prime minister at the time of Sarr's hearing. Sarr testified that after that 1990 arrest, he was tortured and beaten, one of his ribs was broken, he was bound hand and foot and hung from a pole suspended between two tables, and police burned him with cigarette butts.

Sarr alleged that he was arrested again in April or May 1991, jailed for two weeks, tortured, beaten, hit with a rifle, and kicked. During that incarceration, he testified, his captors also warned

him that continued protesting would result in further physical punishment for him and harm to his family.  Finally, the petitioner said that he was arrested in Dakar in May 1991 and accused of being a member of the rebel Democratic Forces of Casamance, ironically the organization that supposedly had kidnaped Sarr just prior to this last arrest.  He testified that he was, on that occasion, detained for three weeks and beaten so severely that he lapsed into a coma.  Upon recovering from his injuries, Sarr said, he managed to escape from the hospital and hide out until he was able to secure his visa and flee from Senegal to the United States in August 1991.

Unfortunately for Sarr, he offered virtually no corroboration for his testimony at the hearing finally held in 2004 before the immigration judge – no documentation of his arrests, no hospital records, no copy of the alleged newspaper article, nothing other than a single affidavit allegedly executed by Sarr's political comrade in Senegal that, because of its similarity to Sarr's own affidavit, appears to have been prepared by his attorney in Michigan and sent to Senegal merely for signing. The omission of corroboration proved significant in light of the fact that Sarr had a large number of family members still in Senegal who, presumably, could have supplied documentary evidence of the events that Sarr described in his second application and at the hearing.  He was also unable to explain to the immigration judge's satisfaction why the 1992 asylum application had omitted the myriad details later included in the 1999 application, saying only that he had not had assistance in filling out the 1992 form and that he had simply forgotten to include in it much of what he later remembered to set out in the 1999 application.

Citing the discrepancies between the two applications and significant inconsistencies between the 1999 application and Sarr's testimony in 2004, the immigration judge discredited the petitioner's testimony, saying that "[t]he inconsistencies and discrepancies present in [Sarr's] claim are more than incidental misstatements; they involve material facts that go to the heart of the asylum claim," and held that he had failed to establish past persecution.  The judge also ruled that even if Sarr's testimony were considered credible, dramatic changes in the country conditions in Senegal in the 13 years since Sarr left were sufficient to rebut any claim of well-founded fear of future persecution.  Indeed, the record reflects that by 2004 the Senegalese Democratic Party had taken over the government in Dakar by means of peaceful elections, and that some of Sarr's former political cohorts were then the highest elected officials in the country.  As a result of these findings, the immigration judge denied all forms of requested relief: asylum, withholding of removal, protection under the United Nations Convention Against Torture, and voluntary departure.

The Board dismissed the petitioner's appeal, finding both that the immigration judge's credibility determinations were not clearly erroneous and that the record supported the conclusion "that the conditions in Senegal have changed significantly since [Sarr] departed in 1991."  The Board further denied the petitioner's motion to remand for consideration of adjustment of status on two grounds: because the government opposed the motion and because the immigration judge had concluded that Sarr testified falsely at his hearing.[2]  The petitioner now seeks review of the Board's decision.

---

[2] While the appeal was pending before the Board, the petitioner had filed an I-485 request for adjustment of status based upon his marriage in 2002 to an American citizen, Chyrell Bellamy, who had also filed an I-130 spousal petition for a resident visa in her husband's name.  At the time of oral argument in this case, three years after they were filed, neither the I-485 petition nor the I-130 petition had yet been processed by the Department of Homeland Security.

*DISCUSSION*

## A. Standard of Review

This appeal requires that we analyze two administrative rulings: the Board's summary affirmance of the immigration judge's denial of applications for asylum, withholding of removal, and protection under the United Nations Convention Against Torture, and the Board's denial of a motion for remand filed initially with the Board itself. When the Board summarily affirms a portion of the decision of an immigration judge without discussing the relevant issues in-depth, "we review the [immigration judge's] decision as the final agency decision." *Denko v. INS*, 351 F.3d 717, 726 (6th Cir. 2003). An examination of the propriety of the Board's ruling on the motion for remand, however, naturally involves an analysis only of the Board's reasoning on that issue.

In either instance, we must sustain an administrative decision if that determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). "Under this deferential standard, we may not reverse the Board's or the immigration judge's determination simply because we would have decided the matter differently." *Koliada v. INS*, 259 F.3d 482, 486 (6th Cir. 2001) (citing *Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998)). Instead, to overturn a Board's factual determination, "we must find that the evidence not only *supports* [a contrary] conclusion, but *compels* it." *Elias-Zacarias*, 502 U.S. at 481 n.1.

## B. Request for Asylum

Before the immigration judge and the Board, Sarr pursued numerous avenues of relief, including a request for political asylum. As we have explained, "resolution of any request for asylum involves 'a two-step inquiry: first, whether the petitioner is a "refugee" within the meaning of the [Immigration and Nationality Act], and second, whether the petitioner merits a favorable exercise of discretion by the Attorney General.'" *Chen v. Gonzales*, 447 F.3d 468, 472 (6th Cir. 2006) (quoting *Perkovic v. INS*, 33 F.3d 615, 620 (6th Cir. 1994)); (*See also INS v. Cardoza-Fonseca*, 480 U.S. 421, 428 n.5 (1987); 8 U.S.C. § 1158(b)(1).

Section 1101(a)(42)(A) of Title 8 of the United States Code defines the term "refugee" to mean:

> [A]ny person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.

"An applicant who has been found to have established . . . past persecution shall also be presumed to have a well-founded fear of persecution on the basis of the original claim," 8 C.F.R. § 208.13(b)(1), unless the immigration judge finds, by a preponderance of the evidence, either that:

> (A) There has been a fundamental change in circumstances such that the applicant no longer has a well-founded fear of persecution in the applicant's country of nationality . . . on account of . . . political opinion; or

> (B) The applicant could avoid future persecution by relocating to another part of the applicant's country of nationality . . . and under all the circumstances, it would be reasonable to expect the applicant to do so.

8 C.F.R. § 208.13(b)(1)(i).

The immigration judge in this case concluded that Sarr was not a "refugee" for asylum purposes, both because the petitioner had not established that he had suffered from past persecution and because Sarr had not met his burden of showing a well-founded fear of future persecution. That decision to deny the request for asylum was driven, in large part, by the immigration judge's conclusion that the petitioner was not a credible witness.

Such a credibility determination is considered a finding of fact and is thus reviewed under the deferential substantial-evidence standard. *See Sylla v. INS*, 388 F.3d 924, 925 (6th Cir. 2004). Even so, the immigration judge's conclusion must be supported by specific reasons and must be based upon issues "that go to the heart of the applicant's claim." *Id.* at 926. In other words, "[i]f discrepancies cannot be viewed as attempts by the applicant to enhance his claims of persecution, they have no bearing on credibility." *Id.* (citations and internal quotation marks omitted).

In her decision in this matter, the immigration judge concluded that numerous inconsistencies were present in the record. However, our review of the administrative record convinces us that some of these alleged inconsistencies involved a misinterpretation of the evidence, as well as a misreading of the various country reports from the State Department. Moreover, it appears that the immigration judge may have put too much emphasis on the omissions in the petitioner's 1992 asylum application. *See Liti v. Gonzales*, 411 F.3d 631, 638 (6th Cir. 2005) (quoting *Secaida-Rosales v. INS*, 331 F.3d 297, 308 (2d Cir. 2003) ("the circumstances surrounding the application process do not often lend themselves to a perfectly complete and comprehensive recitation of an applicant's claim to asylum or withholding, and . . . holding applicants to such a standard is not only unrealistic but also unfair")). As we noted in *Liti*:

> The purpose of holding a removal hearing is not simply to reiterate the statements made in the asylum application, but rather to allow an alien "to present evidence on the alien's own behalf" *including to elaborate on the generalized claims made in the application itself.* 8 U.S.C. § 1229a(b)(4)(B). Therefore, [as long as] the statements in the application [are] not inconsistent with the [petitioner's] subsequent testimony of the specific events at [his] removal hearing, . . . the BIA's adverse credibility finding is unsupported by the evidence, and therefore we are compelled to conclude to the contrary.

*Liti*, 411 F.3d at 639 (emphasis added).

Without question, however, various arrests or detentions mentioned by the petitioner in either his 1999 application or his oral testimony were not included in the other. Also, Sarr failed to introduce into evidence any documentation of his arrests or his hospitalizations in Senegal, or to offer reports by American doctors to corroborate his claims of past injury. Given this state of the record and the deference that we are required to extend to the immigration judge's credibility determinations, it is not possible to say that the evidence compels a conclusion that those findings were erroneous. Moreover, as the immigration judge concluded, "[E]ven taking [Sarr's] testimony and evidence in its best light[, he did not establish] a well-founded fear of future persecution" in Senegal because of changed country conditions since the petitioner left in 1991. Specifically, the immigration judge pointed to a February 2004 country report on Senegal from the United States Department of State that noted that Abdoulaye Wade, the petitioner's former compatriot, had become president of the nation in March 2000, that "[t]he Government generally respected its citizens' rights," that "[t]here were no political killings," and that, "unlike in previous years, there were no credible reports that police and gendarmes beat and tortured suspects during questioning and pretrial detention during the year." We therefore have no basis on which to overturn the denial of asylum.

## C.  Request for Withholding of Removal

Sarr also petitions for review of the administrative denial of his request for withholding of removal.  Pursuant to the provisions of 8 U.S.C. § 1231(b)(3)(A), "the Attorney General may not remove an alien to a country if the Attorney General decides that the alien's life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion."  Thus, in order to qualify for withholding of removal, the petitioner "must establish that there is a clear probability that he will be subject to persecution if forced to return to the country of removal."  *Pilica v. Ashcroft*, 388 F.3d 941, 951 (6th Cir. 2004).  To make such a showing, a petitioner "must demonstrate that 'it is more likely than not' that he or she will be persecuted upon return."  *Liti*, 411 F.3d at 641 (quoting 8 C.F.R. § 1208.16(b)(2)).  Because this burden is "a more stringent burden than what is required on a claim for asylum," *id.* at 640 (quoting *Pilica*, 388 F.3d at 951), it follows from Sarr's failure to establish eligibility for asylum that he cannot satisfy the more onerous burden for withholding of removal either.  *See, e.g.*, *Koliada*, 259 F.3d at 489.

## D.  Request for Relief Under The United Nations Convention Against Torture

The petitioner additionally requested relief under the provisions of the United Nations Convention Against Torture.  To obtain withholding of removal under that convention, "[t]he burden of proof is on the applicant . . . to establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal."  8 C.F.R. § 208.16(c)(2).  This burden is also significantly greater than the burden required to demonstrate eligibility for asylum.  Whereas asylum may be granted by the attorney general upon a showing of a "well-founded fear of persecution," withholding of removal under the Convention Against Torture requires a showing that it is more likely than not that Sarr would not only be persecuted upon his return to Senegal, but that he would be *tortured*.  Because the petitioner cannot demonstrate entitlement to a grant of asylum in this case due to changed conditions, he also cannot meet the more stringent requirements of the Convention Against Torture.  *See, e.g.*, *Liti*, 411 F.3d at 641.  Substantial evidence thus supports the immigration judge's denial of this extraordinary relief to Sarr.

## E.  Alleged Violations of Due Process Clause

The petitioner next asserts that his due process rights were violated when he was denied withholding of removal.  According to Sarr, such relief is mandatory when the petitioner can establish that it is more likely than not that he would suffer persecution should he be returned to his homeland; consequently, argues Sarr, denial of withholding of removal solely because the immigration judge doubted the petitioner's credibility frustrates the expectations secured by the applicable laws.  In fact, however, the administrative denial of withholding of removal was not based on a simple credibility determination, but rather upon a finding that country conditions in Senegal had changed so dramatically in the years since Sarr left that country that there was no basis in fact for a well-founded fear of future persecution.  No due process violation thus occurred in this regard.

In another series of attacks upon the decisions of the immigration judge and the Board, Sarr alleges additional due process violations in the failure of the government to grant his timely motion for remand and to rule upon his wife's I-130 petition to adjust his status based upon marriage to a United States citizen.  Both of the requested forms of relief are, however, granted only in the discretion of the attorney general.  Because "[t]he failure to be granted discretionary relief does not amount to a deprivation of a liberty interest," *see Huicochea-Gomez v. INS*, 237 F.3d 696, 700 (6th Cir. 2001), to the extent that the petitioner raises due process challenges to these Board's decisions, his arguments cannot be sustained.

A liberal reading of Sarr's allegations of error also indicates, however, that the petitioner challenges the Board's failure to grant his motion for remand to consider his request for adjustment of status. "The Board's denial of a motion to remand is reviewed for an abuse of discretion." *Abu-Khaliel v. Gonzales*, 436 F.3d 627, 634 (6th Cir. 2006). "In determining whether the Board abused its discretion, this Court must decide whether the denial . . . was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination . . . ." *Id.* (quoting *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir. 1982)).

In support of the Board's denial of the motion to remand, the government argues that the Board actually relied upon two legitimate rationales in its decision: first, that the immigration judge concluded that Sarr had testified falsely at the hearing, thus making him ineligible for the relief he sought, *see* 8 U.S.C. § 1182(a)(6)(C)(i) ("Any alien who, by . . . willfully misrepresenting a material fact, seeks to procure . . . [a] benefit [provided by immigration laws] is inadmissible."), and, second, that the Department of Homeland Security opposed the petitioner's motion. Indeed, the government argues that the second reason, standing alone, is sufficient to support the denial of a motion to reopen or remand, citing as authority for this proposition the Board's split opinion in *Matter of Velarde-Pacheco*, 23 I&N Dec. 253, 256 (BIA 2002), in which the Board concluded:

> [A] properly filed motion to reopen may be granted, in the exercise of discretion, to provide an alien an opportunity to pursue an application for adjustment where the following factors are present: (1) the motion is timely filed; (2) the motion is not numerically barred by the regulations; (3) the motion is not barred . . . on any . . . procedural grounds; (4) the motion presents clear and convincing evidence indicating a strong likelihood that the respondent's marriage is bona fide; and (5) the Service either does not oppose the motion or bases its opposition solely on [reasons not applicable here].

Our reading of *Velarde* leads us to conclude that although a motion *may be granted* when certain factors are present, the Board's ruling does not necessarily mean that such a motion *must be denied* when any one of the identified factors is absent, especially when the only factor militating against a grant of the motion is the simple fact that the government opposes the motion. Obviously, affording such importance to that single consideration would effectively remove all authority over the granting or denial of such motions by the Board and place it solely within the hands of one of the adversarial parties to the proceedings. More significantly, we note that in discussing the five *Velarde* factors, the Board held that their application in a given case "necessarily requires examination of the *relevant* factors and *a determination of the weight such factors should be accorded*." *Id.* at 256 (emphasis added). This language suggests, of course, that in some cases not all five factors will be relevant and that in all cases no one factor will be dispositive. We therefore reject the government's contention that *Velarde* gives the government unbridled discretion amounting to an absolute veto to block consideration of a motion to reopen.

The government's opposition in this case is, therefore, not controlling on the question of a remand to permit Sarr to seek reopening of his case in an effort to establish that his status should be adjusted on the basis of his valid marriage to Chyrell Bellamy, but is instead simply one factor to be considered. However, there remains the finding by the immigration judge that Sarr testified falsely at the 2004 hearing, a decision that arguably renders him "inadmissible" under 8 U.S.C. § 1182(a)(6)(C)(i) and, hence, ineligible for adjustment of status unless he obtains a waiver of his inadmissibility pursuant to 8 U.S.C. § 1182(i). Because the petitioner's motion to remand did not include a waiver application, the Board held that the motion was "insufficient." Although this decision appears to us to be hyper-technical and, furthermore, based on an omission attributable to counsel and not the petitioner, it is, nevertheless, a decision that is not subject to judicial review. *See* 8 U.S.C. § 1182(i)(2).

## *CONCLUSION*

There are in this case positive factors that argue in favor of permitting Amadou Sarr to establish permanent resident status: he has now resided in the United States for more than 15 years; he is married to an American citizen; no allegations have been made by the government that the marriage is in any way fraudulent; no evidence has been offered that Sarr, a high school teacher, has run afoul of the nation's criminal laws; the government does not assert that the petitioner's motion was not both timely and procedurally proper; and the requests made by both the petitioner and his wife for adjustment of status based on their 2002 marriage have been left pending by immigration officials for more than three years, without benefit of review or a hearing. Under these circumstances, it seems to us that the petitioner deserves, at the very least, an opportunity to have his request for discretionary relief considered by agency officials entrusted with the responsibility for making such determinations. Unfortunately for him, it is only those officials who have the necessary authority to grant relief in this case, and not the courts. Because there is no legal basis upon which to grant relief, we must DENY review of the final order of the Board.