**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 07a0716n.06
Filed: October 4, 2007

**No. 06-4057**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| MASOUD AHMEDMEHRABI,<br>SOUSAN MEHRABI,<br>KASHAYAR AHMEDMEHRABI,<br>SHADI MEHRABI | ) ) ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) ) | ON PETITION FOR REVIEW OF AN<br>ORDER OF THE BOARD OF<br>IMMIGRATION APPEALS |
| ALBERTO GONZALES | ) ) | |
| Respondent. | ) ) ) ) ) ) ) ) | |

Before: GUY, ROGERS, and MCKEAGUE, Circuit judges.

**ROGERS**, Circuit Judge. Mr. Masoud Ahmedmehrabi and his family appeal the decision of the Board of Immigration Appeals denying their requested relief and ordering their removal to Iran. Mr. Ahmedmehrabi is an Iranian national who sought asylum, withholding of removal, and relief under the Convention Against Torture for both himself and his family. After a hearing, the Immigration Judge denied all requested relief and ordered that Mr. Ahmedmehrabi and his family be removed to Iran. He appealed the IJ's decision. The Board of Immigration Appeals dismissed

his appeal in a per curiam opinion. We deny Ahmedmehrabi's petition for review because the IJ's determinations that Mr. Ahmedmehrabi and his family do not qualify for asylum, withholding of removal, or relief under CAT are supported by substantial evidence.

## I. Background

Mr. Ahmedmehrabi lived and practiced medicine in Tehran, Iran from 1991 until October 2000, when he came to the United States on a B-1 visa. His wife and children followed in October 2001 on non-immigrant dependent visas (H-4). It is undisputed that he and his family overstayed their visas and are subject to removal. They applied for asylum, withholding of removal, and relief under the Convention Against Torture in December 2002, and in January 2003 the Immigration and Naturalization Service charged them with being subject to removal.

To support his claims for relief, Mr. Ahmedmehrabi claims that in Iran he was advised not to talk politics at work after he expressed the opinion that some individuals in Iran had been treated unfairly. His wife, Sousan Mehrabi, claims to have had a similar experience in 1998, when she was allegedly warned by members of an Islamic group not to speak too much while she was at the university. She believes that these warnings were prompted by the fact that she spoke too much about politics. Mr. Ahmedmehrabi, while working at the hospital, also treated patients who he believes had been injured by the Iranian government.

The focal point of his arguments, however, is his claimed involvement in hiding his nephew from the Iranian government. Mr. Ahmedmehrabi and his wife testified that in the summer of 1999, Mr. Ahmedmehrabi's nephew, Farshad Mehrabi, participated in a pro-democracy demonstration in

Iran. Following the July demonstration, Mr. Ahmedmehrabi claims that he allowed his nephew to stay at his house for a period of time.[1] In November 1999, Farshad received a subpoena to appear before Iran's Revolutionary Court; he left for the United States in November 2000, where he was granted withholding of removal in August 2002.[2] Mr. Ahmedmehrabi claims that he, too, has been issued a subpoena by the Revolutionary Court. That subpoena was allegedly delivered to his parents in Tehran in November 2002. He claims that his sister forwarded the subpoena from his parents to his immigration attorney in the United States. The Islamic Revolutionary Courts were established in 1979 to try offenses "viewed as potentially threatening to the Islamic Republic, including threats to internal or external security, narcotics and economic crimes, and official corruption," and "are notorious for their disregard of international standards of fairness." U.S. Dep't of State Country Report on Human Rights Practices 2006, *available at* http://www.state.gov/p/nea/ci/82004.htm. Mr. Ahmedmehrabi believes that he was subpoenaed because he provided shelter to his nephew in 1999, and he testified that he is afraid to return to Iran because those who answer Revolutionary Court subpoenas are frequently arrested, beaten, killed, or disappear. The State Department's 2006 country report on Iran details Iran's worsening human rights record, which includes "unjust executions after reportedly unfair trials; disappearances; torture and severe officially sanctioned punishments such

_____

[1]The Government notes inconsistencies in Mr. Ahmedmehrabi's testimony regarding the precise length of time. Resp't Br. 7. Mr. Ahmedmehrabi initially told an asylum officer that Farshad had stayed for "several days," but later stated that Farshad had stayed for two months. JA 94. When Mr. Ahmedmehrabi got to Immigration Court, he testified that he did not remember the exact duration and characterized it as "a little bit more than a month." JA 94-95.

[2] Farshad later returned to Iran because of a medical condition, and Mr. Ahmedmehrabi claims that Farshad is in hiding. JA 92-93, 97-99.

as death by stoning; flogging; . . . arbitrary arrest and detention; lack of judicial independence; lack of fair public trials," among other things. *Id*.

The Immigration Judge was not persuaded by Mr. Ahmedmehrabi's evidence. He concluded that the testimony and evidence fell short of that required to support a grant of asylum, and that therefore the evidence also necessarily fell short of that required under the higher standards for withholding of removal or relief under the CAT. The IJ determined that "even if the testimony of the adult respondents were credible or true," the circumstances relied on by Mr. Ahmedmehrabi and his family were "too remote in time and substance" to support a conclusion that they had a well-founded fear of persecution, which is a prerequisite to a grant of asylum. JA 27. The IJ noted that Mr. Ahmedmehrabi was never detained, imprisoned, or otherwise mistreated while in Iran and that the worst maltreatment to which he and his wife testified was being advised to stop talking politics by their co-workers. The IJ concluded that the significance of these minor pre-1999 incidents was considerably undermined by the fact that Mr. Ahmedmehrabi and his wife failed to file applications for asylum when they came to the US in 2000, and also by the wife's testimony that she never feared returning to Iran until her husband allegedly received the subpoena from the Revolutionary Court in 2002. Additionally, the IJ found it significant that Mr. Ahmedmehrabi was employed at a government hospital and kept his position until he left in 2000, and that both petitioner and his family were allowed to leave Iran without any trouble.

The IJ concluded, in particular, that the alleged subpoena ordering Mr. Ahmedmehrabi to appear before the Revolutionary Court carried no evidentiary weight because it was of questionable significance and/or authenticity. The IJ deemed the document to be of questionable authenticity

because it changed many hands before it reached Mr. Ahmedmehrabi, and Mr. Ahmedmehrabi was "unable to provide proof of the alleged transfer[s]" and "offered no testimony to establish a credible chain of custody regarding the document relating to who, how or when his parents allegedly received the document"; because the document was created when Mr. Ahmedmehrabi was in the United States; and because Mr. Ahmedmehrabi failed to prove corroborative affidavits regarding the subpoena, despite still being in contact with his parents. JA 28. The IJ also questioned the document's authenticity – and, if assumed to be authentic, its significance and relation to the 1999 demonstration – because Mr. Ahmedmehrabi remained employed at a government hospital following the 1999 incident; because he and his family were allowed to depart Iran with no difficulty; and because his testimony was "devoid of what [his] political opinion was and how he overtly expressed it to the Iranian Government. [Mr. Ahmedmehrabi's] claim that he was political or expressed adverse political opinions was nebulous and without any specificity." JA 28. Finally, the IJ found Mr. Ahmedmehrabi's testimony regarding his participation in the 1999 demonstrations to be implausible and unbelievable. This finding contributed to the IJ's doubt about the subpoena's authenticity and significance because Mr. Ahmedmehrabi alleges that the subject of the subpoena is his participation in the 1999 demonstrations by housing his nephew.

The Immigration Judge denied the petitioner's requests for asylum, withholding of removal, and relief under CAT, and ordered that he and his family be removed to Iran. Mr. Ahmedmehrabi appealed the IJ's decision to the Board of Immigration Appeals, which agreed with the IJ's conclusions and dismissed the appeal in a per curiam opinion. Mr. Ahmedmehrabi now seeks review in this court, arguing that the Immigration Judge and the Board of Immigration Appeals erred in not

granting him and his family asylum, withholding of removal, or relief under CAT; that the IJ's failure to accord the subpoena evidentiary weight violated Petitioners' due process rights; and that he and his family should have been granted humanitarian asylum.

## II. Analysis

### A. Asylum, Withholding of Removal, and relief under CAT

The IJ's determinations that Mr. Ahmedmehrabi and his family do not qualify for asylum, withholding of removal, or relief under CAT are all supported by substantial evidence. As recounted in the facts above, the IJ found Mr. Ahmedmehrabi's and his wife's account of their well-founded fear of persecution to be undermined by the facts that: they were never mistreated while in Iran; they were allowed to leave Iran without trouble; the pre-1999 incidents were minor and remote in time and substance; Mr. Ahmedmehrabi and his wife testified that they had no fear of returning to Iran prior to 2002; Mr. Ahmedmehrabi was never fired from his position at a government hospital; and Mr. Ahmedmehrabi and his wife never made clear exactly what their political opinions are, or how they expressed them to the government. For all of these reasons, the IJ found their story generally incredible and insufficient to ground a reasonable fear of persecution. In addition, the IJ was unpersuaded by Mr. Ahmedmehrabi's story regarding his involvement in the 1999 demonstrations by sheltering his nephew. Again, he found the story to be undermined by Mr. Ahmedmehrabi's apparent lack of political enthusiasm and the facts that he retained his government job and had no trouble with the Iranian government following 1999.

To qualify for asylum, Mr. Ahmedmehrabi and his family bore the burden of demonstrating that they are unable or unwilling to return to their home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1101(a)(42)(A). Absent past persecution, they must have a subjective fear of returning that is objectively reasonable. *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004). Although some of the IJ's reasons for discounting the Ahmedmehrabis' claims and testimony are more persuasive than others, the IJ's determinations are supported by "reasonable, substantial, and probative evidence on the record considered as a whole," *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992)), and we cannot say that "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4); *see also Singh v. Ashcroft*, 398 F.3d 396, 400-01 (6th Cir. 2005); *Sarr v. Gonzales*, 485 F.3d 354, 362 (6th Cir. 2007). Because the record provides substantial evidence to support the conclusion that Mr. Ahmedmehrabi and his family are ineligible for asylum, "the record necessarily supports the finding that [they do] not meet the more stringent standard of a clear probability of persecution required for withholding of [removal]" under 8 U.S.C. § 1231(b)(3)(A). *Berri v. Gonzales*, 468 F.3d 390, 397-98 (6th Cir. 2006) (citing *Allabani v. Gonzales*, 402 F.3d 668, 675 (6th Cir. 2005)); *see also Sarr*, 485 F.3d at 362. Likewise, having failed to demonstrate a reasonable fear of persecution on any grounds, let alone that torture is more likely than not, substantial evidence also supports the denial of relief under the CAT. *See Berri*, 468 F.3d at 397-98; 8 C.F.R. § 208.16(c)(2).

Moreover, it was not improper for the IJ to give the alleged subpoena from Iran's Revolutionary Court no evidentiary weight. The IJ's independent and preexisting doubt about the

family's credibility, combined with doubts about the subpoena's authenticity, appears to have led him to conclude that the subpoena deserved no evidentiary weight, either because it was not authentic or, if authentic, was insignificant or unrelated to Mr. Ahmedmehrabi's story about the 1999 demonstrations. Indeed, there appears to be no precedent requiring immigration judges to assign every piece of documentary evidence some persuasive value.

Mr. Ahmedmehrabi cites numerous cases for the proposition that failure to give the subpoena evidentiary weight was error. An immediate problem is that his cited cases are not binding authority for this court. Additionally, the cases are factually distinguishable from the instant case and do not compel the conclusion that the IJ's refusal to give his subpoena evidentiary weight was error. In *Sall v. Gonzales*, the immigration judge, because of a geographical error, had found the document at issue to have been forged. 437 F.3d 229, 235-36 (2d Cir. 2006). The Second Circuit concluded that it "[could not] know what the IJ would have found had she believed [Petitioner's document] to be legitimate . . . ." *Id*. at 236. *Sall* is distinguishable from the instant case for two reasons. First, the IJ below did not dismiss Mr. Ahmedmehrabi's subpoena out of hand due to an apparent error. Rather, the IJ considered it in light of its evidentiary deficiencies, such as lack of a proper chain of custody and authentication, as well as in light of Mr. Ahmedmehrabi's and his wife's other testimony. Only then did the IJ conclude that the subpoena did not merit evidentiary weight. Second, the court in *Sall* was unsure whether the IJ would change his decision on remand if the document at issue were legitimate. In contrast, the IJ in the instant case explicitly stated that Mr. Ahmedmehrabi and his family failed to carry their burden to qualify for asylum, withholding of removal, or relief under CAT "even if the testimony of the adult respondents were credible or true."

JA 27. It is clear from the IJ's opinion that he was not persuaded by their story – valid subpoena or not.

Mr. Ahmedmehrabi also cites *Gjerazi v. Gonzales* for the proposition that the IJ was required to accord his subpoena evidentiary weight. In *Gjerazi*, however, the IJ not only doubted the authenticity of the documents at issue, but: (1) had borderline irrational reasons for doubting their authenticity; (2) improperly required corroborating evidence despite the fact that he found applicant's testimony otherwise credible; and then (3) used his doubt about the documents' authenticity against the applicant as a basis for finding him incredible and denying his application. 435 F.3d 800, 809-11 (7th Cir. 2006). In contrast, the IJ in Mr. Ahmedmehrabi's case had more reasonable grounds for doubting the subpoena's authenticity, including the lack of a proper chain of custody and his doubts about the significance of Mr. Ahmedmehrabi's role in the events supposedly underlying the subpoena. More importantly, the IJ below did not find Mr. Ahmedmehrabi's and his wife's account to be otherwise credible and then use irrational doubts about the subpoena *against* them as a reason to deny their application. The IJ below found their story unpersuasive regardless of the authenticity of the subpoena. Further, there is no indication in his opinion that the IJ used the subpoena to discredit either Mr. Ahmedmehrabi or his wife; rather, the IJ simply concluded that it did nothing to bolster their claims.

*Georgis v. Ashcroft*, 328 F.3d 962 (7th Cir. 2003), also does not support Mr. Ahmedmehrabi's contention. In *Georgis*, the IJ improperly required corroborating evidence (though none is required by statute), and then excluded the document in question because it was not submitted in advance of the hearing date. *Id*. at 968. The IJ then proceeded to base his denial of

petitioner's asylum application entirely on the lack of corroborating evidence. *Id.* The Seventh Circuit quoted *Khan v. INS*, 237 F.3d 1143, 1144 (9th Cir. 2001), in concluding that it was error for the IJ to exclude the document, because the IJ expressly stated that it was for lack of corroborating evidence that he found Georgis not credible and denied her asylum application. *Georgis*, 328 F.3d at 969. These circumstances are not present in the instant case. The IJ found Mr. Ahmedmehrabi's story incredible regardless of the subpoena, and denied his application on that basis. Moreover, the IJ did not *exclude* Mr. Ahmedmehrabi's subpoena; he merely found that it did nothing to aid the credibility of Mr. Ahmedmehrabi's story.

In *Khan v. INS*, the IJ had committed the same error of excluding documents and then basing his denial of the petitioner's asylum application on a lack of corroborating evidence. 237 F.3d at 1143-44. In addition, the IJ in *Khan* excluded the documents because they had not been certified as authentic pursuant to INS regulation authentication procedure. *Id.* The Ninth Circuit also held this to be error because "documents may be authenticated in immigration proceedings through any recognized procedure . . . . The procedure specified in 8 C.F.R. § 287.6 provides one, but not the exclusive, method." *Id.* at 1144. In contrast, there is no indication that the IJ in the instant case required Mr. Ahmedmehrabi to authenticate the subpoena through the § 287 procedure, or indeed through any cumbersome, formal procedure.

In summary, none of the cases Mr. Ahmedmehrabi cites supports the argument that the IJ erred in finding his subpoena unpersuasive. The IJ below committed none of the errors that were committed in the above cases, and instead simply did not find the subpoena helpful in bolstering Mr.

Ahmedmehrabi's otherwise-lacking story. Because the IJ's treatment of the subpoena did not constitute error, neither did it constitute a violation of Mr. Ahmedmehrabi's due process rights.

Even assuming the authenticity of the subpoena and that failure to give it evidentiary weight was error, it is clear from the IJ's opinion that he would reach the same result even if he gave the subpoena evidentiary weight. *See* JA 27-29. This conclusion would remain supported by substantial evidence.

**B. Humanitarian Asylum**

Mr. Ahmedmehrabi and his family also fail to qualify for asylum under the regulatory provision for humanitarian asylum, as the regulation is patently not applicable in this case. If an asylum applicant has demonstrated past persecution, but his resulting presumption of a well-founded fear has been rebutted, he may still be given a discretionary grant of humanitarian asylum if:

> (A) The applicant has demonstrated compelling reasons for being unwilling or unable to return to the country arising out of the severity of the past persecution; or

> (B) The applicant has established that there is a reasonable possibility that he or she may suffer other serious harm upon removal to that country.

8 C.F.R. § 208.13(b)(1)(iii). Although neither the IJ nor the BIA addressed the issue of humanitarian asylum directly, both concluded that Mr. Ahmedmehrabi and his family failed to demonstrate that they had suffered any past persecution. Such findings of fact by the agency are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4). Given the family's account of their supposed past persecution before both the IJ and the BIA, it was

reasonable for the fact-finders to conclude that they suffered no past persecution. Because past persecution is a necessary predicate to a grant of humanitarian asylum – indeed, the very basis for it – Mr. Ahmedmehrabi and his family are ineligible for such a grant.

### III. Conclusion

For the foregoing reasons, Mr. Ahmedmehrabi's petition for review of the decision of the Board of Immigration Appeals is denied.