NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0718n.06

No. 10-3341

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Oct 18, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| ALEKSANDER VASILI and MARTHA VASILI, | ) ) ) | |
| Petitioners, | ) ) | |
| v. | ) ) ) | ON PETITION FOR REVIEW OF AN ORDER OF THE BOARD OF IMMIGRATION APPEALS |
| ERIC HOLDER, JR., Attorney General, | ) ) | |
| Respondent. | ) ) | |

Before: MOORE and KETHLEDGE, Circuit Judges; and MARBLEY, District Judge.[*]

ALGENON L. MARBLEY, District Judge. Petitioners Aleksander and Martha Vasili seek

a review of a final order of removal entered against them by the Board of Immigration Appeals

("BIA") on February 26, 2010. The BIA concluded that Petitioners had failed to produce reasonably

available corroborating evidence to establish their claim, to prove that the harm they suffered

constituted persecution, or to prove that there was a causal nexus between the harm and a protected

characteristic under 8 U.S.C. § 1101(a)(42). Petitioners contend that the BIA's determination that

Petitioners did not present adequate evidence to sustain their appeal was erroneous because the BIA

ignored relevant evidence. Because Petitioners have failed to produce any evidence compelling

reversal, we affirm the BIA's decision.

---

[*]The Honorable Algenon L. Marbley, United States District Judge for the Southern
District of Ohio, sitting by designation.

## I.  BACKGROUND & PROCEDURAL HISTORY

### A.  Procedural History

Petitioner Aleksander Vasili is a citizen of the Republic of Albania and an Albanian national. He came to the United States on July 5, 2005, on a non-immigrant visa that authorized him to remain in the country until August 4, 2005.  He applied for asylum on June 30, 2006.[1]  On November 29, 2006, the Department of Homeland Security ("DHS") issued a Notice to Appear on January 17, 2007, to show why Petitioner should not be removed under 8 U.S.C. § 1227(a)(1)(B).  Petitioner conceded his removability as charged, and moved before the Immigration Judge ("IJ") that his application for asylum under Section 208(a) of the Immigration and Nationality Act be deemed a request for withholding of removal under Section 241(b)(3) of the Act.  The IJ conducted a hearing and, on May 2, 2008, denied Petitioner's application for asylum and withholding of removal.

Petitioner appealed the IJ's decision to the BIA by filing a Notice of Appeal on May 30, 2008.  The BIA dismissed Petitioner's appeal on February 26, 2010.  Petitioner then filed the appeal now before the Court.

### B.  Petitioner's Claim

Petitioner was born on August 22, 1976 in Delvina, a small city in Albania, but is an ethnic Greek. He alleges that anti-Greek sentiment in Albania manifested in several incidents of persecution of Petitioner and his family and that he feared similar persecution were he to return to Albania.

Petitioner claimed to have been personally persecuted in a number of ways.  He and other Greeks were harassed while serving in the Albanian Army, his store was burglarized and vandalized, his house was fired upon by automatic weapons, he was assaulted while at a religious service of the

---

[1]Ms. Vasili is a derivative beneficiary of Mr. Vasili's petition for asylum.  References to "Petitioner" shall hereinafter be deemed references to Mr. Vasili.

Greek Orthodox Church, his life was threatened while working on the political campaign of a Greek candidate, he was arrested and questioned about his activities during the period when he lived in Greece, and he was severely beaten. These events took place between 1996 and 2002.

In January of 2003, Petitioner moved to Greece but maintained a residence in Delvina. In 2004, Petitioner claims that his house in Albania was ransacked and, while reorganizing his house, he was beaten by a group of three people. Back in Greece, Petitioner received threats on his life. After Petitioner moved to the United States in 2005, he returned to Greece for a long vacation. While there, his car was vandalized and his property stolen. He was also the victim of another assault.

Petitioner claimed that members of his family were persecuted, as well, including the arrest of his sister for teaching Greek language classes, the firing of his brother from his position at a bank, the firing of his sister from her position at City Hall, and the illegal reclamation of family-owned land.

Finally, Petitioner supported his claim for asylum with evidence of general anti-Greek actions. He recalled that a series of attacks against Greeks in 1992 began when a group of Albanian adults beat Greek children and young adults in the central square of Delvina. The beating was prompted by the foundation of OMONIA, a Greek-rights advocacy organization headed by Petitioner's brother. Petitioner additionally provided references to several neutral accounts of anti-Greek discrimination in Albania, the most recent of which dated from 2005.

### C. The IJ's Decision

The IJ rejected Petitioner's claim that he would be persecuted based on his religion (Greek Orthodox), nationality (Greek), and membership in a particular social group (Greek Orthodox

3

people) if he were returned to Albania. The IJ acknowledged that Petitioner's testimony was largely consistent with his application for asylum, but concluded that the evidence overall lacked credibility because it lacked corroboration. In particular, the fact that the events Petitioner described were of the type readily corroborated by documentary evidence weighed heavily in the IJ's conclusion. The IJ reasoned, moreover, that Petitioner had not proven that many of the incidents of persecution he described were in fact caused by his Greek heritage. Finally, the IJ found that the neutral materials documenting anti-Greek sentiment in Albania were out of date and outweighed by the more recent submissions from the Government.

On the basis of those findings, the IJ ruled as follows: (1) that Petitioner had not carried his burden of corroborating central facts; (2) that he had not shown a well-founded fear that he would be persecuted on the basis of his ethnicity if he returned to Albania; (3) that he had not carried his burden of proving that he had been persecuted in the past on the basis of his ethnicity; and (4) that he had not established a clear probability that he would be persecuted if he returned to Albania.

### D. The BIA's Decision

The BIA considered whether the IJ erred in finding that Petitioner lacked credibility, that he had not established past persecution, and that he had not established a well-founded fear or a clear probability of future persecution.[2] The BIA concluded that the IJ was supported in finding that Petitioner had not met his burden of proof or met his obligation to produce reasonably available corroborating evidence. The BIA additionally held that Petitioner failed to prove that the harm he suffered rose to the level of persecution or that the harm was caused by an impermissible act. As for

---

[2]Petitioner raised other contentions of error before the BIA that he does not renew before this court.

the claim of future persecution, the BIA held that Petitioner's allegations regarding future persecution were undermined by his voluntary visits to Albania.

## II. JURISDICTION

We have jurisdiction over this petition for review of the Board of Immigration Appeals' decision under 8 U.S.C. § 1252(a).

## III. STANDARD OF REVIEW

Where the BIA adopts the IJ's decision but adds its own reasoning or findings, we directly review both the BIA and the IJ's decisions "to determine whether the decision of the BIA should be upheld on appeal." *Gilaj v. Gonzales*, 408 F.3d 275, 282–83 (6th Cir. 2005) (per curiam). We must affirm findings of fact if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Sarr v. Gonzales*, 485 F.3d 354, 359 (6th Cir. 2007) (quotations omitted). Unless "the evidence not only *supports* [reversal] but *compels* it," we may not overturn the BIA's decision. *INS v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992); *see also Sarr*, 485 F.3d at 359.

## IV. DISCUSSION

Petitioner's central argument is that the BIA and the IJ ignored corroborating evidence and his credible explanations for the lack of such evidence. Credibility determinations are "considered a finding of fact and [are] thus reviewed under the deferential substantial-evidence standard." *Sarr*, 485 F.3d at 360. Likewise, an IJ's findings regarding the availability of corroborating evidence may not be reversed "unless the court finds . . . that a reasonable trier of fact is compelled to conclude that such corroborating evidence is unavailable." 8 U.S.C. § 1252(b)(4); REAL ID Act of 2005, § 101, Pub. L. No. 109–13, 119 Stat. 231, 305 (2005).

5

In order to be granted asylum, a petitioner has to demonstrate that he was a "refugee," 8 C.F.R. § 1208.13(a), defined as a person unable to return to his country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion," 8 U.S.C. § 1101(a)(42)(A). The persecution must be on one of several statutorily enumerated grounds. 8 C.F.R. § 1208.13(b)(1). The petitioner bears the burden of establishing the causal nexus between the persecution, past or future, and a protected characteristic. *See* 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 1208.13; *Elias-Zacarias*, 502 U.S. at 478, 482–83. To show a well-founded fear of future persecution, a petitioner must prove that he would be singled out personally for persecution or that he had a reasonable fear of persecution because of his membership in a group subject to a "pattern or practice" of persecution. 8 C.F.R. § 1208.13(b)(2)(I), (iii)(A). A fear may be well-founded even if there is "less than a 50% chance of the occurrence taking place." *I.N.S. v. Cardoza-Fonseca*, 480 U.S. 421, 431 (1987).

The evidence that the Petitioner claims the IJ ignored does not compel reversal of the conclusion that the Petitioner had failed to carry his burden of showing past persecution. The IJ did in fact consider the affidavit from Petitioner's brother, contrary to the Petitioner's assertion. As for the certificate from the Mayor of Delvina, although it corroborates Petitioner's claims that his store was looted twice, it does not support Petitioner's claim that the looting occurred because of his ethnicity: the certificate places the blame instead on "dark non democratic forces." Likewise, the certificate from the President of the Delvina Branch attests that the Petitioner was "persecuted and harassed by different Albanian nationalists . . . because [he] supported the rights of the Hellenic minority." This corroborates Petitioner's general claim that his persecution was on the basis of his politics but gives no specific support to any of the incidents Petitioner attempted to prove. Finally,

the IJ did consider the news articles that Petitioner claims the IJ overlooked, finding that all of them were "relatively out of date." In sum, all of the evidence that the Petitioner argues the IJ failed to consider was either addressed by the IJ or is insufficiently probative to compel a finding that Petitioner was entitled to asylum.

Nor can we conclude that the evidence compels reversal of the conclusion that the Petitioner had not proven a well-founded fear of future persecution. *See* 8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 1208.13(b)(2)(I), (iii). The Petitioner and his wife testified that he voluntarily returned to Albania two times since 1993, once to check on his family property and once to marry. The Petitioner's wife also testified that she returned once to Albania to have her passport renewed. As the BIA noted, such returns undermine the Petitioner's claim of a well-founded fear of future persecution. *See Loho v. Mukasey*, 531 F.3d 1016, 1017–18 (9th Cir. 2008) ("It is well established in this court that an alien's history of willingly returning to his or her home country militates against a finding of past persecution or a well-founded fear of future persecution."); *Bleta v. Gonzales*, 174 F. App'x 287, 292 (6th Cir. 2006) (concluding fact that petitioner for asylum "left and returned to Albania at least three times during the period of alleged persecution" supported BIA's adverse credibility determination); *Ngarurih v. Ashcroft*, 371 F.3d 182, 189 (4th Cir. 2004) (holding that substantial evidence supported BIA's denial of asylum where petitioner's return to his home country showed that he was not "a person unable or unwilling to return to his home country due to a well-founded fear of persecution). Thus the Petitioner has not presented any evidence or law to compel a reversal of the BIA's determination, and we must affirm.

## V.  CONCLUSION

Because the BIA's entrance of a final order of removal was supported by substantial evidence, we AFFIRM.