06-3189-ag, 07-0110-ag
Melnitsenko v. Mukasey

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2007

(Argued: October 23, 2007                    Decided: February 6, 2008)

Docket Nos. 06-3189-ag (L), 07-0110-ag (Con)

_____


MARIA MELNITSENKO,

*Petitioner*,


—v.—


MICHAEL B. MUKASEY, UNITED STATES ATTORNEY GENERAL,[1]

*Respondent*.

_____


B e f o r e :


FEINBERG, WINTER, and STRAUB,

*Circuit Judges*.

_____


Petitioner Maria Melnitsenko petitions for review of (1) an order of the Board of Immigration Appeals ("BIA") affirming an Immigration Judge's decision denying Melnitsenko's motion to suppress evidence and ordering Melnitsenko removed; and (2) an order of the BIA denying Meltnitsenko's motion to reopen her removal proceedings. Because we find that the BIA abused its discretion in denying the motion to reopen based solely on the fact that the Department of Homeland Security opposed the motion, the petition for review is GRANTED in part and DENIED in part.

_____

[1] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Attorney General Michael B. Mukasey is automatically substituted for former Attorney General Alberto R. Gonzales as respondent in this case.

JON E. JESSEN (Stuart Goldberg, *on the brief*), Law Offices of Jon E. Jessen, LLC, Stamford, CT, *for Petitioner*.

PAUL FIORINO, Trial Attorney (Peter D. Keisler, Assistant Attorney General, Richard M. Evans, Assistant Director, *on the brief*), Office of Immigration Litigation, U.S. Department of Justice, Washington, D.C., *for Respondent*.

_____

STRAUB, *Circuit Judge*:

Petitioner Maria Melnitsenko petitions for review of (1) a June 7, 2006 order of the Board of Immigration Appeals ("BIA") affirming Immigration Judge ("IJ") Matthew J. D'Angelo's January 7, 2005 decision denying Melnitsenko's motion to suppress evidence and ordering Melnitsenko removed, *In re Maria Melnitsenko*, No. A 98 322 554 (B.I.A. June 7, 2006), *aff'g* No. A 98 322 554 (Immig. Ct. Hartford Jan. 7, 2005); and (2) a December 29, 2006 order of the BIA denying Melnitsenko's motion to reopen, *In re Maria Melnitsenko*, No. A 98 322 554 (B.I.A. Dec. 29, 2006). For the following reasons, we grant the petition for review as to the denial of the motion to reopen.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.    Initial Order of Removal

Melnitsenko is a citizen of Estonia who entered the United States on March 30, 2002 as a non-immigrant visitor with authorization to remain in the United States for one year. She did not leave the United States after the year had elapsed.

On August 19, 2004, Melnitsenko was traveling from Vermont to her home in Connecticut with her then boyfriend (now husband) Stanley Demakos, a United States citizen, when she was stopped at a border patrol checkpoint at White River Junction, Vermont (the "Checkpoint"). Upon being detained and interrogated by border patrol agents, Melnitsenko

2

admitted that she was a citizen of Estonia and had overstayed her visa. That same day, the border patrol agents issued Melnitsenko a Notice to Appear charging her with removability under Immigration and Nationality Act ("INA") § 237(a)(1)(B).[2]

At Melnitsenko's removal hearing, the government introduced into evidence a "Record of Deportable/Inadmissible Alien" ("Form I-213"). The Form I-213 indicates that Melnitsenko was stopped at the Checkpoint on August 19, 2004, and that she admitted that she was a citizen of Estonia and had overstayed her visa. Melnitsenko, who was represented by counsel, applied for no relief from removal, but moved to suppress the Form I-213 on the basis that its contents were "illegally obtained." In support of this motion, Melnitsenko submitted a sworn affidavit detailing her detention by the border patrol. In the affidavit, Melnitsenko stated that she was stopped by the border patrol while driving home from a weekend in Vermont, was taken into a trailer with about four or five other border patrol officers, and was detained for three hours before being released. Melnitsenko provided no other evidence in opposition to the charges or in support of any ground of relief. Moreover, Melnitsenko refused to testify at the hearing beyond admitting her name and date of birth on the ground that providing more information "might incriminate" her.

On January 7, 2005, the IJ found Melnitsenko removable as charged. The IJ noted that the only evidence offered by Melnitsenko was her sworn affidavit, which was insufficient "to indicate that the Border Patrol acted improperly, much less egregiously." The IJ also rejected any allegation that the roadblock checkpoint set up by the border patrol was illegal. The IJ

_____

[2]Section 237(a)(1)(B) of the INA provides that "[a]ny alien who is present in the United States in violation of this chapter or any other law of the United States . . . is deportable." 8 U.S.C. § 1227(a)(1)(B).

3

accordingly admitted the Form I-213 into evidence. Based on Melnitsenko's admissions as to her name and date of birth, records showing that a person with Melnitsenko's exact name and date of birth entered the United States on a J-1 visa as an au pair, and contents of the Form I-213, the IJ found Melnitsenko removable as charged.

On appeal to the BIA, Melnitsenko argued that the "manner of the search and seizure by the border patrol officer" at the Checkpoint, which was located "approximately 100 miles from the [Canadian] border," constituted "sufficiently egregious" conduct to warrant suppression of the Form I-213. Melnitsenko, citing to INA § 287(a)(3), which gives immigration officers authority to search vehicles for aliens within a "reasonable distance" from the border, 8 U.S.C. § 1357(a)(3), also challenged the constitutionality of, *inter alia*, 8 C.F.R. § 287.1(a)(2), which defines "reasonable distance" as "within 100 air miles from any external boundary of the United States." On June 7, 2006, the BIA affirmed the IJ's decision denying the motion to suppress and ordering Melnitsenko removed. The BIA rejected Melnitsenko's argument that she had suffered an egregious constitutional violation and noted that stopping vehicles without a warrant at a fixed checkpoint is expressly authorized by INA § 287(a)(3). The BIA declined to address Melnitsenko's argument regarding the constitutionality of 8 C.F.R. § 287.1(a)(2) due to a lack of "authority to entertain facial challenges to the constitutionality of the laws or regulations that [it] administer[s]."

**B.     Motion to Reopen**

On August 29, 2006, within 90 days of the BIA's order,[3] Melnitsenko filed a motion to

---

[3]Subject to certain exceptions, a motion to reopen "must be filed no later than 90 days after the date on which the final administrative decision was rendered in the proceeding sought to be reopened." 8 C.F.R. § 1003.2(c)(2).

4

reopen her removal proceedings with the BIA in order to adjust her status to that of a legal permanent resident based upon her April 20, 2005 marriage to Demakos, with whom she had lived since October 2002.[4] The Department of Homeland Security ("DHS") opposed this motion on the ground that, at her removal hearing, Melnitsenko "refused to provide any argument or evidence to support her claim and refused to answer any questions." Accordingly, the DHS reasoned, "[t]he display of audacity by [Melnitsenko] in now asking the BIA and ultimately the immigration judge for a favorable exercise of discretion and [to] reopen her case for possible relief is astonishing."

On December 29, 2006, the BIA denied the motion to reopen. The BIA stated that, under its decision in *Matter of Velarde-Pacheco*, 23 I. & N. Dec. 253 (B.I.A. 2002) (en banc), any motion to reopen to adjust status based upon an unapproved petition with respect to a marriage occurring after the initiation of removal proceedings requires, *inter alia*, that the DHS not oppose the motion. The BIA concluded that the motion "must be denied" based solely on the fact that the DHS opposed it.

## DISCUSSION

**A.      Initial Order of Removal**

Melnitsenko first challenges the initial order of removal, arguing that the Form I-213 should have been suppressed in her removal proceedings because it was obtained in violation of her Fourth Amendment rights. To that end, she argues that the Checkpoint was located approximately 107 miles away from the Canadian border, in excess of the 100-mile "reasonable

---

[4]Demakos filed a Petition for Alien Relative ("Form I-130") along with an Application to Register Permanent Residence or Adjust Status ("Form I-485") with the Department of Homeland Security on behalf of Melnitsenko. Those applications are pending.

distance" from the border defined by 8 C.F.R. § 287.1(a)(2).[5] Melnitsenko further argues that even if the Checkpoint is within 100 "air miles" of the border, it still does not qualify as a "functional equivalent of the border" for Fourth Amendment purposes, because it "is located closer to four other states, in a fairly densely populated area, with many interconnected secondary and tertiary roads, and . . . there is no indication that the nature of the traffic passing through the [Checkpoint] was international in character." For support, Melnitsenko cites *United States v. Jackson*, 825 F.2d 853, 860 (5th Cir. 1987) (en banc), which held that "[t]o justify searches at checkpoints labeled the functional equivalent of the border the government must demonstrate with 'reasonable certainty' that the traffic passing through the checkpoint is 'international' in character." Accordingly, Melnitsenko argues that the case should be remanded for an evidentiary hearing as to (a) exactly how far from the border the Checkpoint was located and (b) whether the traffic passing through the Checkpoint was international in character.

We need not decide whether use of the Checkpoint violated Melnitsenko's Fourth Amendment rights, nor remand for the agency to decide this issue, because, as explained below, we find that even if it did, suppression of the Form I-213 would not be required.

The United States Supreme Court has held that a Fourth Amendment violation does not, by itself, require suppression of evidence in the course of a removal proceeding. *See INS v. Lopez-Mendoza*, 468 U.S. 1032, 1046 (1984) ("Important as it is to protect the Fourth Amendment rights of all persons, there is no convincing indication that application of the exclusionary rule in civil deportation proceedings will contribute materially to that end.").

---

[5]Melnitsenko does not now raise any argument with respect to the constitutionality of 8 C.F.R. § 287.1(a)(2).

6

However, as we have recognized,

> [t]he [Supreme] Court [in *Lopez-Mendoza*] qualified this ruling in two significant ways. First, it stated that its "conclusions concerning the exclusionary rule's value might change, if there developed good reason to believe that Fourth Amendment violations by [immigration] officers were widespread." And, second, it explained that its holding did not necessarily pertain to circumstances involving "egregious violations of Fourth Amendment or other liberties that might transgress notions of fundamental fairness and undermine the probative value of the evidence obtained."

*Almeida-Amaral v. Gonzales*, 461 F.3d 231, 234 (2d Cir. 2006) (internal citations omitted).

Before the BIA, Melnitsenko argued only that the alleged Fourth Amendment violation was so egregious as to survive *Lopez-Mendoza*. Accordingly, any argument that the alleged violation is widespread is unexhausted. *See* 8 U.S.C. § 1252(d)(1).[6]

In *Almeida-Amaral*, we stated that under the egregiousness prong of *Lopez-Mendoza*, exclusion of evidence is appropriate "if record evidence established either (a) that an egregious violation that was fundamentally unfair had occurred, or (b) that the violation—regardless of its egregiousness or unfairness—undermined the reliability of the evidence in dispute." 461 F.3d at 235. As in *Almeida-Amaral*, "[n]othing before us raises doubts about the veracity of the evidence obtained as a result of the seizure." *Id*. Thus, we need only determine whether the search "transgress[ed] notions of fundamental fairness." *Id*. (alternation in original) (internal quotation marks omitted). In making this determination, two principles apply:

---

[6]We have stated that exhaustion of issues, as opposed to categories of relief, is a mandatory, as opposed to jurisdictional, requirement. *See Lin Zhong v. U.S. Dep't of Justice*, 480 F.3d 104, 119-20 (2d Cir. 2007). Nevertheless, we decline to exercise any authority to review this unexhausted issue in this case given that we believe it concerns a factual determination that should have been made by the agency in the first instance. We further note that Melnitsenko has not provided any evidence that Fourth Amendment violations such as the ones she alleges she experienced are widespread.

7

First, the egregiousness of a constitutional violation cannot be gauged solely on the basis of the validity (or invalidity) of the stop, but must also be based on the characteristics and severity of the offending conduct. Thus, if an individual is subjected to a seizure for *no* reason at all, that by itself may constitute an egregious violation, but only if the seizure is sufficiently severe. Second, even where the seizure is not especially severe, it may nevertheless qualify as an egregious violation if the stop was based on race (or some other grossly improper consideration).

*Id*. Melnitsenko has not alleged that her stop was based on race or "some other grossly improper consideration"; accordingly, the only determination we must make is whether the stop and search were "sufficiently severe" to be deemed "egregious" Fourth Amendment violations. If they were not, then the IJ properly declined to suppress the Form I-213.

With respect to the severity of the search, Melnitsenko argues that "[o]nce [she] was stopped, she was escorted to a trailer by four or five uniformed officers and interrogated, fingerprinted and photographed, for three hours without any evidence of any *Miranda* or other warnings given." We find that these actions by the border patrol agents, even assuming the Checkpoint itself was illegal, fall short of the type of Fourth Amendment violation that could be considered "egregious" under *Lopez-Mendoza*.

In *Lopez-Mendoza*, one of the petitioners was arrested in violation of his Fourth Amendment rights as part of a raid on a potato processing plant, briefly detained, taken to the county jail, and questioned—all without being warned of his right to remain silent. 468 U.S. at 1037. Nevertheless, the Supreme Court found that this conduct was not an "egregious violation[] of Fourth Amendment or other liberties." *Id*. at 1050. The actions at issue here were less "severe" than those in *Lopez-Mendoza*, as Melnitsenko was neither arrested nor taken to jail. *See, e.g.*, *Navarro-Chalan v. Ashcroft*, 359 F.3d 19, 23 (1st Cir. 2004) ("Navarro's list of complaints, [including being taken upstairs to an interrogation room,] does not rise to that level

8

of egregiousness."). Accordingly, Melnitsenko cannot be said to have experienced an egregious Fourth Amendment violation, if she experienced a Fourth Amendment violation at all, and so the IJ did not err in refusing to suppress the Form I-213 or in ordering Melnitsenko removed.[7] This portion of the petition for review must therefore be denied.

**B.      Motion to Reopen**

Next, Melnitsenko challenges the BIA's denial of her motion to reopen as an abuse of discretion. In denying the motion, the BIA stated that its decision in *Matter of Velarde-Pacheco*, 23 I. & N. Dec. 253 (B.I.A. 2002) (en banc) holds, *inter alia*, that should the DHS oppose a motion to reopen to adjust status based upon an unapproved petition pertaining to a marriage occurring after the initiation of removal proceedings, the motion may not be granted. As the DHS opposed Melnitsenko's motion to reopen, the BIA concluded that the motion "must be denied." For the reasons set forth below, we find that the BIA exceeded its allowable discretion in denying Melnitsenko's motion to reopen, and we accordingly remand.

---

[7]This conclusion is also supported by our case law relating to whether border searches are "routine" for purposes of Fourth Amendment analysis. *See*, *e.g.*, *Tabbaa v. Chertoff*, No. 06-0119-cv, — F.3d —, 2007 WL 4150299, at *6–9 (2d Cir. Nov. 26, 2007) (holding that border searches where returning attendees of an Islamic conference in Canada were detained for four to six hours, interrogated, patted down, fingerprinted, and photographed were "routine" for Fourth Amendment purposes); *United States v. Irving*, 452 F.3d 110, 123 (2d Cir. 2006) ("Routine searches include those searches of outer clothing, luggage, a purse, wallet, pockets, or shoes which, unlike strip searches, do not substantially infringe on a traveler's privacy rights."); *United States v. Silva*, 715 F.2d 43, 47 (2d Cir. 1983) (noting that questions about "citizenship, the length and purpose of [an applicant's] trip to Canada, [and] what items she had acquired or bought in Canada" are all routine); *see also United States v. Flores-Montano*, 541 U.S. 149, 155 n.3 (2004) ("We think it clear that delays of one to two hours at international borders are to be expected.").

### 1. *Matter of Velarde-Pacheco*

In 1986, in an effort to prevent aliens from receiving immigration benefits based on fraudulent marriages, Congress amended the INA to bar any alien from adjusting status based upon marriage if that alien had entered into the marriage after the commencement of deportation or exclusion proceedings. *See* Immigration Marriage Fraud Amendments of 1986, Pub. L. No. 99-639, § 5(a), 100 Stat. 3537, 3543 (codified as amended at section 245(e) of the INA, 8 U.S.C. § 1255(e)(1)–(2) (2006)). "However, this same broad sweep also excluded from adjustment many [aliens], including those with United States citizen children, whose marital relationships were bona fide, with obvious resulting hardship to citizens and lawful permanent residents of this country." *Velarde-Pacheco*, 23 I. & N. Dec. at 258 (Holmes, Board Member, concurring). Congress subsequently amended the Act in 1990 to exclude from the bar any alien who could establish "by clear and convincing evidence to the satisfaction of the Attorney General that the marriage was entered into in good faith and . . . was not entered into for the purpose of procuring the alien's entry as an immigrant." Immigration Act of 1990, Pub. L. No. 101-649, § 702(a), 104 Stat. 4978, 5086 (codified as amended at section 245(e)(3) of the INA, 8 U.S.C. § 1255(e)(3) (2006)).

Initially, in *Matter of Arthur*, 20 I. & N. Dec. 475 (B.I.A. 1992), the BIA held that it would "decline to grant motions to reopen for consideration of applications for adjustment of status based upon unadjudicated visa petitions" pertaining to marriages entered into after removal proceedings had commenced. *Id*. at 479. The BIA reasoned that "[a]n inquiry into whether the evidence submitted . . . is sufficient . . . to demonstrate prima facie eligibility . . . would necessarily involve an in-depth examination into the merits of the petition. Such

examination would . . . constitute a substantial and unwarranted intrusion into the district director's authority over the adjudication of visa petitions." *Id*.

However, in 2002, the BIA concluded:

> The effect of [the] policy in *Matter of Arthur*, [] coupled with the regulation limiting respondents to one motion to reopen filed within 90 days of a final administrative decision and the Service's inability to adjudicate many I-130 visa petitions within that time frame, ha[d] been to deprive a small class of respondents, who [we]re otherwise prima facie eligible for adjustment, of the opportunity to have their adjustment applications reviewed by an Immigration Judge.

*Velarde-Pacheco*, 23 I. & N. Dec. at 255. Accordingly, the BIA, en banc, modified the *Arthur* rule as follows:

> [A] properly filed motion to reopen may be granted, in the exercise of discretion, to provide an alien an opportunity to pursue an application for adjustment where the following factors are present: (1) the motion is timely filed; (2) the motion is not numerically barred by the regulations; (3) the motion is not barred by *Matter of Shaar*, 21 I. & N. Dec. 541 (B.I.A. 1996), or on any other procedural grounds; (4) the motion presents clear and convincing evidence indicating a strong likelihood that the respondent's marriage is bona fide; and (5) the Service either does not oppose the motion or bases its opposition solely on *Matter of Arthur*[].

*Id*. at 256.[8] Relying on the legislative history of the 1990 amendment, the BIA reasoned:

> A prima facie showing of eligibility merely affords respondents who present sufficient evidence a single opportunity to have their adjustment applications adjudicated. Such an opportunity is consistent with Congress' legislative intent in amending the marriage fraud provisions: that aliens who marry after proceedings have been initiated, and who seek adjustment of status, should be afforded one opportunity to present clear and convincing evidence that their marriage is bona fide.

*Id*. at 257.[9]

---

[8]*Matter of Shaar*, 21 I. & N. Dec. 541 (B.I.A. 1996) pertains to aliens who fail to depart during their voluntary departure period, and is therefore not implicated here.

[9]The reasonableness of the BIA's interpretation of the statute has not been challenged.

### 2.   Melnitsenko's Motion to Reopen

We review the BIA's denial of a motion to reopen for abuse of discretion. *See Maghradze v. Gonzales*, 462 F.3d 150, 152 (2d Cir. 2006). The BIA exceeds its allowable discretion if its decision "(1) provides no rational explanation, (2) inexplicably departs from established policies, (3) is devoid of any reasoning, or (4) contains only summary or conclusory statements." *Id*. at 153 (internal quotation marks omitted). The BIA also exceeds its allowable discretion when it fails to consider the facts of record relevant to the motion. *See Lopes v. Gonzales*, 468 F.3d 81, 85-86 (2d Cir. 2006).

Here, Melnitsenko filed a timely motion to reopen to adjust her status based on a pending visa petition pertaining to her marriage to a United States citizen. She submitted, along with her motion, evidence of the bona fides of her marriage. There appears to be no dispute that Melnitsenko satisfied the first four *Velarde-Pacheco* factors before the BIA.[10] However, the DHS opposed her motion to reopen, relying on a ground unrelated to the bona fides—or lack thereof—of her marriage: her refusal to answer any questions at her removal hearing.[11] Melnitsenko argues that the BIA abused its discretion in finding that her motion to reopen "must be denied" based only on the fact that the DHS objected and with no regard to the merits of the DHS's objection. For the reasons that follow, we agree.

As an initial matter, the question of whether the majority in *Velarde-Pacheco* intended the fifth factor to be dispositive rather than a discretionary consideration is subject to some

---

[10]Relying on the fifth factor, the BIA did not assess the other four factors in this case. Accordingly, on remand, the BIA is free to consider the other factors.

[11]The DHS also made a separate objection based on *Matter of Arthur*; however, as stated above, this objection would not foreclose reopening under *Velarde-Pacheco*.

dispute. *Compare Sarr v. Gonzales*, 485 F.3d 354, 363 (6th Cir. 2007) ("Our reading of *Velarde* leads us to conclude that although a motion *may be granted* when certain factors are present, the Board's ruling does not necessarily mean that such a motion *must be denied* when any one of the identified factors is absent, especially when the only factor militating against a grant of the motion is the simple fact that the government opposes the motion. . . . The government's opposition in this case is, therefore, not controlling on the question of a remand to permit Sarr to seek reopening of his case in an effort to establish that his status should be adjusted on the basis of his valid marriage . . . , but is instead simply one factor to be considered."), *and Velarde-Pacheco*, 23 I. & N. Dec. at 256 ("Every application necessarily requires examination of the relevant factors and a determination of the weight such factors should be accorded in the exercise of discretion, with respect both to reopening and to the ultimate determination on the application for relief."), *with id.* at 268–69 (Pauley, Board Member, dissenting) ("As I read the [majority] opinion . . . if the [DHS] wishes to preserve the status quo ante, it need only adopt a policy of filing a one-sentence 'Opposition' to motions to reopen that previously would have been barred under *Matter of Arthur* . . . in all cases in which the [DHS] had not yet completed its investigation of the bona fides of the alien's marriage."), *and id.* at 264 (Rosenberg, Board Member, concurring) ("I do not believe that [DHS] opposition is an appropriate 'condition' that, as a rule, should result in denial of a motion to reopen. . . . [S]uch objections should not constitute an insurmountable barrier to granting a motion to reopen."). Nevertheless, it is clear that in this case, the BIA applied the fifth factor as dispositive, holding that the fact of the DHS's objection was in itself sufficient to doom Melnitsenko's motion to reopen.

However, the BIA's decision in the present case provided no explanation, let alone a

13

"rational" one, for why the fact of DHS's objection justified denying the motion to reopen. *Maghradze*, 462 F.3d at 153. Instead, the BIA relied solely on *Velarde-Pacheco*, which, in turn, provides no rational explanation for why the fact of the DHS's opposition alone is sufficient to deny a motion to reopen.[12] Significantly, the BIA in *Velarde-Pacheco* was not even called on to provide such an explanation because the government in that case had only objected on *Matter of Arthur* grounds; accordingly, the BIA granted Velarde-Pacheco's motion to reopen. 23 I. & N. Dec. at 254–57. Indeed, the only justification the BIA gave in *Velarde-Pacheco* for imposing such a dispositive factor is that the DHS is "in a better position to ascertain whether additional factors, which may not be readily apparent, militate against reopening." *Id*. at 257. While this statement supports an argument that the BIA ought to be able to *consider* any objection by the DHS, it does not justify the imposition of a mechanism by which the DHS, an adversarial party in the proceeding, may unilaterally block a motion to reopen for any or no reason, with no effective review by the BIA. *See Sarr*, 485 F.3d at 363 ("Obviously, affording such importance to [the simple fact that the government opposes the motion] would effectively remove all authority over the granting or denial of such motions by the Board and place it solely within the hands of one of the adversarial parties to the proceedings."); *see also Velarde-Pacheco*, 23 I. & N. Dec. at 269 (Pauley, Board Member, dissenting) ("The majority decision, far from remedying the perceived injustice on which it is predicated, may . . . prove to be nothing more than a source of useless additional paperwork."); *id*. at 264 (Rosenberg, Board Member, concurring) ("Our role is to engage in impartial and independent adjudications, not to rubberstamp the preferences

---

[12]Moreover, the government, in defending the BIA's actions in this case, also failed to provide any reasoning, other than a cite to *Velarde-Pacheco*, for why the fact of the DHS's objection, in and of itself, is sufficient to defeat a motion to reopen.

of the [DHS]."). Moreover, allowing the DHS to defeat a motion to reopen for no reason at all is certainly contrary to the purpose of the amendment identified by the BIA—that aliens who entered into marriages after the commencement of removal proceedings should be given "one opportunity" to present clear and convincing evidence of the bona fides of the marriage. *Cf. Li Chen Zheng v. Ashcroft*, 332 F.3d 1186, 1196 (9th Cir. 2003) ("To interpret the term acquiescence as the BIA did, however, misconstrues and ignores the clear Congressional intent quoted by the BIA merely a paragraph above its restrictive holding."); *Silva-Rengifo v. Att'y Gen.*, 473 F.3d 58, 69 (3d Cir. 2007) (quoting with approval *Li Chen Zheng*). Accordingly, we hold that the BIA exceeded its allowable discretion in treating the fifth *Velarde-Pacheco* factor as dispositive and in denying Melnitsenko's motion to reopen based solely on the fact that the DHS opposed the motion.

In so holding, we do not intend to suggest that the BIA may not *consider* objections made by the DHS. As the BIA noted, the DHS may indeed be "in a better position" than the BIA to identify additional factors that "militate against reopening." *Velarde-Pacheco*, 23 I. & N. Dec. at 257. However, the BIA must, in accordance with its duties in adjudicating motions to reopen, provide sufficient explanation for its decisions in order to provide this Court a meaningful opportunity to review those decisions. *See Poradisova v. Gonzales*, 420 F.3d 70, 77 (2d Cir. 2005) ("Despite our generally deferential review of IJ and BIA opinions, we require a certain minimum level of analysis from the IJ and BIA opinions . . . , and indeed must require such if judicial review is to be meaningful.").

Thus, we now hold that when the DHS opposes a motion to reopen, the BIA may not deny the motion based solely on the *fact* of the DHS's objection. Moreover, if the BIA denies a

15

motion to reopen based on the *merits* of the DHS's objection, the BIA must provide adequate reasoning as to why the objection calls for denial of the motion to reopen in the exercise of discretion, in order to provide a meaningful opportunity for judicial review. *See Maghradze*, 462 F.3d at 152–53; *Poradisova,* 420 F.3d at 77.

Accordingly, this case must be remanded to the BIA for reconsideration of Melnitsenko's motion to reopen. Should the BIA decide on remand to deny the motion to reopen based on the merits of the DHS's objection, it must provide adequate reasons for doing so to provide this Court with a meaningful opportunity to review any such denial.

**CONCLUSION**

For the foregoing reasons, the petition for review is GRANTED in part and DENIED in part. The December 29, 2006 decision of the BIA denying Melnitsenko's motion to reopen is VACATED, and the case is REMANDED to the BIA for proceedings consistent with this opinion. As we have completed our review, the stay of removal previously granted in this case is VACATED, and the pending motion for stay of removal is DENIED as moot.