# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

MARTA SAID AHMED,
                    *Petitioner,*

v.

MICHAEL B. MUKASEY, Attorney
General,
                    *Respondent.*

No. 07-73661

Agency No.
A077-829-270

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
October 22, 2008—San Francisco, California

Filed November 19, 2008

Before: Mary M. Schroeder, Dorothy W. Nelson, and
Stephen Reinhardt, Circuit Judges.

Opinion by Judge D. W. Nelson

**COUNSEL**

Robert B. Jobe, Law Office of Robert B. Jobe, San Francisco, California, for the petitioner.

Corey L. Farrell, Office of Immigration Litigation, Department of Justice, Washington, D.C.; Anthony Norwood, Assistant Attorney General, Department of Justice, Washington D.C., for the government.

---

**OPINION**

D.W. NELSON, Senior Circuit Judge:

Petitioner Marta Said Ahmed petitions this court for review of the Board of Immigration Appeals' denial of her motion to reopen. We grant the petition for review, and remand for proceedings consistent with this opinion.[1]

*STATEMENT OF FACTS AND PROCEDURAL HISTORY*

Petitioner Marta Said Ahmed ("Ahmed"), a citizen of Ethiopia, began her immigration proceedings in 2000 when she applied for asylum and withholding of removal. Ahmed hired Yemi Getachew ("Getachew") to represent her before the Immigration Court because Getachew was also Ethiopian, and Ahmed could easily communicate with her. Ahmed never signed a retainer agreement, and their dealings were very informal.

On July 22, 2002, the Immigration Judge ("IJ") denied Ahmed's application. Four days later, she married Kassaye

---

[1]Ahmed also petitions for review of (1) the denial of her claim for asylum, withholding of removal, and relief under the Convention Against Torture, and (2) the denial of her motion to reopen for adjustment of status. These petitions were denied in a separate memorandum disposition.

Sabir ("Sabir"), a United States citizen. Sabir subsequently filed a Petition for Alien Relative (Form I-130). On January 8, 2004, the Board of Immigration Appeals ("BIA") summarily affirmed the IJ's decision. Getachew informed Ahmed that she would need to reopen the case on the basis of her marriage, and referred her to Olumide Obayemi ("Obayemi"), another attorney.

Getachew and Obayemi never explained their professional or financial arrangement to Ahmed. They repeatedly assured her that they were both representing her; Obayemi, however, appeared to be the only one working on the motion to reopen for adjustment of status ("the motion to reopen"). Although Ahmed agreed to pay Getachew for the appeal, Obayemi made several demands for additional funds.

Neither attorney told Ahmed when the motion to reopen was due. On October 4, 2004, 270 days after the BIA had dismissed her asylum appeal, they finally filed it. Because it post-dated the ninety-day deadline for motions to reopen, they argued for tolling based on changed country conditions. This exception, however, clearly did not apply to Ahmed, who sought to reopen based on adjustment of status. *See* 8 C.F.R. § 1003.2(c)(3)(ii).

In support of the application, Getachew and Obayemi submitted: (1) a copy of Ahmed's marriage certificate and license; (2) the I-130 application; (3) notice that her visa petition was still pending; (4) photographs of her wedding; and (5) one joint phone bill from March 2004 in the amount of $3.62. They also submitted joint bank statements, a joint certificate of title to an automobile, and a joint insurance policy, all of which post-dated April 6, 2004 (the ninety-day deadline).

The Department of Homeland Security ("DHS") opposed the motion because it was untimely, and because Ahmed provided "scant evidence" that her marriage was "bona fide."

The BIA accordingly denied the motion because it was untimely.

Ahmed did not know that the motion was filed late until it was denied. When Ahmed asked Getachew for an explanation, Getachew informed her that "the Board had made a mistake, and such mistakes were common." She repeatedly assured Ahmed that she had filed everything on time.

In February 2007, Ahmed, represented by new counsel, filed a second motion to reopen based on the ineffective assistance of her former counsels. In the second motion, Ahmed provided supplemental evidence that her marriage was bona fide. In addition to resubmitting the pre-April 2004 documents, she submitted new documents post-dating April 2004, including: (1) additional photographs; (2) joint bank account statements; (3) letters from friends declaring the marriage to be legitimate; (4) a joint insurance policy; (5) a joint certificate of title to a car; (6) joint phone bills; (7) a statement of joint occupancy of their residence; and (8) the birth certificate of her son, Abihu Kassaye Teba, who was born in 2006. In addition, on June 22, 2006, her I-130 petition had been approved.

Ahmed filed a supplemental declaration stating that although Getachew informed her that "she would need to prove that her marriage was real," Getachew did not explain how to do so. Getachew asked for a wedding photograph, but never requested any additional proof. According to Ahmed, she would have provided additional evidence if she had been asked.

On August 14, 2007, the BIA denied Ahmed's second motion to reopen. The BIA determined that Ahmed had failed to establish prejudice because Ahmed's first motion to reopen would have been denied even if it had been timely. The BIA found that the DHS had opposed the motion when it was filed, and held that "such opposition would have *mandated* a denial

of the motion under *Matter of Velarde*." (emphasis added). It also concluded that Ahmed could not have proven, by clear and convincing evidence, that her marriage was bona fide. Ahmed subsequently petitioned this court for review.

## STANDARD OF REVIEW

This court "review[s] BIA rulings on motions to reopen . . . for abuse of discretion and reverse[s] only if the Board acted arbitrarily, irrationally, or contrary to law." *Mohammed v. Gonzales*, 400 F.3d 785, 791 (9th Cir. 2005). Questions of law, including ineffective assistance of counsel claims, are reviewed de novo. *Id.* at 791-92.

## DISCUSSION

[1] In removal proceedings, "[i]neffective assistance of counsel . . . amounts to a violation of due process under the Fifth Amendment if 'the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case.' " *Maravilla Maravilla v. Ashcroft*, 381 F.3d 855, 857-58 (9th Cir. 2004) (quoting *Lopez v. INS*, 775 F.2d 1015, 1017 (9th Cir. 1985)). "To prevail, the petitioner must demonstrate first that counsel failed to perform with sufficient competence, and, second, that she was prejudiced by counsel's performance." [2] *Mohammed*, 400 F.3d at 793.

[2] The government argues only in passing that Getachew and Obayemi provided competent representation. We conclude that their performance was deficient. While an attorney's representation need not "be brilliant," it "cannot serve to make [the] immigration hearing so fundamentally unfair that [the alien] was prevented from reasonably presenting his case. *Lin v. Ashcroft*, 377 F.3d 1014, 1027 (9th Cir. 2004)

---

[2]Petitioners must also comply with the procedural requirements set forth in *Matter of Lozada*, 19 I. & N. Dec. 637, 639 (BIA 1988). There is no dispute that Ahmed complied with the *Lozada* requirements.

(internal quotations omitted). In failing to advise Ahmed of the necessary documentation for the motion to reopen "in time for [her] to gather it," *see Iturribarria v. INS*, 321 F.3d 889, 900-01 (9th Cir. 2003); in submitting the motion to reopen well beyond the deadline; in arguing for an exception to the deadline that clearly did not apply; and in misrepresenting the facts or law to Ahmed about the timeliness of the motion, Getachew and Obayemi prevented Ahmed from reasonably presenting her case. That is surely not competent representation.

**[3]** The government argues more adamantly that, regardless of counsel's deficiencies, Ahmed was not prejudiced. "[P]rejudice results when 'the performance of counsel was so inadequate that it *may* have affected the outcome of the proceedings.' " *Id.* at 793-94 (quoting *Ortiz v. INS*, 179 F.3d 1148, 1153 (9th Cir. 1999)). The petitioner does not need to show that she would win on her claims absent her attorneys' deficient performance. *Lin*, 377 F.3d at 1027. She need only show "*plausible* grounds for relief." *Id.*

In *Matter of Velarde-Pacheco*, the BIA determined that a motion to reopen for adjustment of status may be granted, notwithstanding the pendency of a visa petition, where:

> (1) the motion is timely filed; (2) the motion is not numerically barred by the regulations; (3) the motion is not barred by *Matter of Shaar* . . . , or on any other procedural grounds; *(4) the motion presents clear and convincing evidence indicating a strong likelihood that the respondent's marriage is bona fide; and (5) the Service either does not oppose the motion or bases its opposition solely on Matter of Arthur*.

23 I. & N. Dec. 253, 256 (BIA 2002) (emphasis added).

## A. DHS OPPOSITION UNDER *VELARDE-PACHECO*

**[4]** As a threshold matter, although the BIA concluded that Ahmed's first motion would have been denied because the DHS opposed it, whether the BIA intended the fifth factor in *Velarde* to be dispositive is "subject to some dispute." *Melnitsenko v. Mukasey*, 517 F.3d 42, 50 (2d Cir. 2008); *compare Velarde-Pacheco*, 23 I. & N. Dec. at 264 (Rosenberg, Board Member, concurring) ("I see no justification for the degree of deference extended to the Service under the fifth condition articulated in the majority opinion. I do not believe that Service opposition is an appropriate 'condition' that, as a rule, should result in denial of a motion to reopen."), *and id.* at 268 (Pauley, Board Member, dissenting) ("As I read the opinion, the Service is required only to register its opposition to the alien's motion."), *with id.* at 256 (majority opinion) ("Every application necessarily requires examination of the relevant factors and a determination of the weight such factors should be accorded in the exercise of discretion."). Nevertheless, pursuant to *Velarde*, the BIA accorded controlling weight to the opposition of the DHS.

**[5]** Ahmed argues that this constitutes legal error. This is an issue of first impression before the Ninth Circuit. Both the Second and Sixth Circuits have held that the DHS should not be able to block unilaterally a motion to reopen. *Melnitsenko*, 517 F.3d at 52; *Sarr v. Gonzales*, 485 F.3d 354, 363 (6th Cir. 2007). The Third Circuit, however, has found that *Velarde* did accord the DHS veto power. *Bhiski v. Ashcroft*, 373 F.3d 363, 371 (3d Cir. 2004).

**[6]** We find the reasoning of the Second and Sixth Circuits to be more persuasive. Accordingly, we hold that when the DHS opposes a motion to reopen for adjustment of status, the BIA may consider the objection, but may not deny the motion based solely on the fact of the DHS's objection.

To begin with, the BIA did not provide a "reasoned explanation" for its decision in *Velarde*. *See Movsisian v. Ashcroft*,

395 F.3d 1095, 1098 (9th Cir. 2005). Although it notes, in passing, that "[t]he Service is in a better position to ascertain whether additional factors, which may not be readily apparent, militate against reopening," *Velarde*, 23 I. & N. Dec. at 257, there is no further discussion in the decision. "While this statement supports an argument that the BIA ought to be able to *consider* any objection by the DHS, it does not justify the imposition of a mechanism by which the DHS . . . may unilaterally block a motion to reopen." *Melnitsenko*, 517 F.3d at 51.

**[7]** More importantly, Board members must "exercise their independent judgement and discretion in considering and determining the cases coming before the Board." 8 C.F.R. § 1003.1(d)(1)(ii). Allowing the adversarial party to a proceeding to unilaterally block a motion, for any or no reason, deprives the BIA, and by extension this court, of any meaningful review. *Sarr*, 485 F.3d at 363.

**[8]** Because we hold that DHS opposition should not be dispositive, the BIA erred in concluding that Ahmed's original Motion to Reopen would have been denied solely on the basis of the government's opposition.

B.  PROVING THE *BONA FIDES* OF AHMED'S MARRIAGE

The BIA also concluded that Ahmed's first motion would have been denied because, had she filed on time, she would not have been able to prove, by clear and convincing evidence, that her marriage was bona fide.

**[9]** When a marriage is contracted during removal proceedings, the petitioner must overcome a regulatory presumption of fraud. *See* 8 C.F.R. § 204.2(a)(1)(iii); *see also Malhi v. INS*, 336 F.3d 989, 994 (9th Cir. 2003). "[A]n applicant must offer evidence that is probative of the motivation for marriage, not just the bare fact of getting married. To qualify, a marriage must be based on an actual and legitimate relation-

ship rather than a subjective desire to adjust status based on marriage." *Malhi*, 336 F.3d at 994.

**[10]** Documents that can help establish the legitimacy of the marriage include:

> (1) Documentation showing joint ownership of property; (2) A lease showing joint tenancy of a common residence; (3) Documentation showing commingling of financial resources; (4) Birth certificate(s) of child(ren) born to the petitioner and beneficiary; (5) Affidavits of third parties having knowledge of the bona fides of the marital relationship . . . ; [and] (6) Any other [relevant] documentation.

8 C.F.R. § 204.2(a)(1)(iii)(B)(1)-(6).

**[11]** Although Ahmed submitted all of the recommended documents in support of her second motion, most of them post-dated the April date by which she ought to have filed. The only documents pre-dating April 2004 were (1) a copy of her marriage certificate and license; (2) the visa application; (3) photographs; and (4) one joint phone bill for $3.26 from March 2004. These documents were insufficient to prove, by clear and convincing evidence, that her marriage was bona fide. *See Malhi*, 336 F.3d at 994.

An attorney's "unreasonable failure to investigate and present the factual and legal basis of . . . [her client's] claim would itself amount to ineffective assistance of counsel." *Lin*, 377 F.3d at 1025. It is "reasonable for . . . [an alien] to assume that . . . his paid representative . . . would timely file critical motions in his case and advise him about what kind of information was needed *in time for him to gather it*." *Iturribarria*, 321 F.3d at 900-01 (emphasis added). In determining the existence of prejudice, the panel may examine facts uncovered by new counsel. *Lin*, 377 F.3d at 1024.

**[12]** Getachew never advised Ahmed how to collect the necessary evidence; all she requested was a wedding photograph. The government argues that, even with effective counsel, Ahmed could not have collected the necessary records. It is certainly possible that Ahmed and Sabir were not engaged in an "actual and legitimate" relationship in early 2004. Perhaps it only became bona fide in subsequent years. Ahmed's I-130 petition, however, has been approved, and she has now provided a wealth of records proving the legitimacy of her marriage. Because Ahmed need only show "plausible grounds for relief," the BIA erred in concluding that Ahmed's first motion to reopen would have been denied.[3]

## CONCLUSION

Because the BIA erred in finding that Ahmed failed to show prejudice, we GRANT Ahmed's petition for review and REMAND to the BIA for proceedings consistent with our decision.

**GRANTED AND REMANDED.**

---

[3]Ahmed also argues, in the alternative, that the BIA failed to consider all of the evidence she presented in her second motion to reopen when it found that she could not have proven the legitimacy of her marriage. Because we find that the BIA erred on the merits, we need not decide whether the decision was also procedurally flawed.