**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| MASIS TADEVOSYAN,<br>*Petitioner*,<br><br>v.<br><br>ERIC H. HOLDER, JR., Attorney General,<br>*Respondent*. | No. 07-75087<br><br>Agency No.<br>A097-103-077 |

| | |
|---|---|
| MASIS TADEVOSYAN,<br>*Petitioner*,<br><br>v.<br><br>ERIC H. HOLDER, JR., Attorney General,<br>*Respondent*. | No. 08-71791<br><br>Agency No.<br>A097-103-077 |

| | |
|---|---|
| MASIS TADEVOSYAN,<br>*Petitioner*,<br><br>v.<br><br>ERIC H. HOLDER, JR., Attorney General,<br>*Respondent*. | No. 08-73437<br><br>Agency No.<br>A097-103-077<br><br><br>OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
February 6, 2014—Pasadena, California

Filed February 26, 2014

Before: Harry Pregerson, Michael R. Murphy,[*]
and Marsha S. Berzon, Circuit Judges.

Opinion by Judge Berzon

## SUMMARY[**]

### Immigration

The panel granted Masis Tadevosyan's petition for review of the Board of Immigration Appeals' denial of his motion to reopen his removal proceedings after he married a United States citizen and applied for a visa and adjustment of status.

The panel held that the BIA abused its discretion, whether because it based denial purely on the Department of Homeland Security's opposition to the motion to reopen or on the merits of DHS' contention that Tadevosyan failed to

---

[*] The Honorable Michael R. Murphy, Senior Circuit Judge for the U.S. Court of Appeals for the Tenth Circuit, sitting by designation.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

establish that he was not a public charge. The panel held that the BIA improperly accorded controlling weight to the fact that DHS opposed reopening, without analyzing whether the basis of the opposition was correct. The panel also held that the BIA abused its discretion because it failed to provide any reasoned explanation for its decision.

## COUNSEL

Cheri Attix (argued), Law Office of Cheri Attix, San Diego, California, for Petitioner.

Jesse Lloyd Busen (argued), Trial Attorney, Tony West, Assistant Attorney General, and Erica B. Miles, Senior Litigation Counsel, United States Department of Justice, Office of Immigration Litigation, Civil Division, Washington, D.C., for Respondent.

## OPINION

BERZON, Circuit Judge:

After Masis Tadevosyan was ordered removed from the country for an immigration violation, he married an American citizen and applied for a visa and adjustment of status. The Board of Immigration Appeals (BIA) refused to reopen his removal proceedings. Our question is whether in doing so, the BIA improperly relied on the fact of the Department of Homeland Security's (DHS) opposition to his motion, rather than on the merits of the motion, or otherwise abused its discretion in deciding the motion. We grant the petition for

review of the BIA's decision and remand for further proceedings.[1]

## I. Background

Tadevosyan, a native of Iran and citizen of Armenia, entered the United States in May 2002 on a non-immigrant visa permitting him to remain in the country until later that year. After he overstayed the visa's expiration date, he was placed in removal proceedings, and an immigration judge ordered his removal to Armenia.

Tadevosyan appealed the removal order to the BIA. While his appeal was pending, Tadevosyan married Lyubov Smolyanyuk, a United States citizen. Smolyanyuk filed an I-130 petition for a visa for Tadevosyan.

The BIA then affirmed the removal order. Tadevosyan filed a timely motion to reopen, asking the BIA to allow him to pursue adjustment of status through the pending I-130 petition filed by his wife. Attached to the motion were copies of the I-130 petition; an I-485 application for adjustment of status; and two I-864 affidavits of support, one from Smolyanyuk and a second from a joint sponsor, Norik

---

[1] Tadevosyan initially also sought review of the BIA's November 29, 2007 order affirming an immigration judge's denial of his claims for asylum, withholding of removal, and relief under the Convention against Torture, and of the BIA's July 8, 2008 decision denying his second motion to reopen. He no longer pursues those petitions. Accordingly, we dismiss those petitions for review.

Abrahamian.**[2]** Smolyanyuk's affidavit represented that she and Tadevosyan had not earned any income in the prior tax year; Abrahamian's attested that his income in the last tax year was $22,211. Abrahamian attached photocopies of his 2006 Federal and state tax return forms, which showed an adjusted gross income of $22,211, and certified under penalty of perjury in the affidavit that the Federal income tax return was a true copy of the return filed with the Internal Revenue Service. Abrahamian did not include copies of his federal W-2 forms, but did submit with his California tax return a "Schedule W-2 CG," which contained the same information as his W-2 forms.

DHS opposed Tadevosyan's motion to reopen. It argued that Tadevosyan had not shown that the I-130 petition had been approved and thus that there was a visa available for Tadevosyan at this time. DHS further contended that Tadevosyan had not submitted sufficient evidence to establish that he was not a public charge, because "the joint sponsor has not provided any proof, such as Forms W-2s, letters, paycheck stubs, or financial statements, to support the income stated on his 2006 federal income tax return." (error in original). DHS did not address Abrahamian's submission of the Schedule W-2 CG.

The BIA denied Tadevosyan's motion to reopen on March 27, 2008, stating,

---

**[2]** If the relative sponsoring the visa application is unable to meet the minimum income requirement to demonstrate income sufficient to maintain the immigrant, the immigrant may submit an affidavit of support from another individual, called a joint sponsor, who is able to meet that requirement and who agrees to support the immigrant. 8 C.F.R. §§ 213a.2(c)(2)(iii)(A)(2), (C).

In this case, the record reflects that respondent does not have an approved immediate relative visa petition, and the DHS opposes his motion in light of the absence of evidence to establish that he is not inadmissible as a public charge. In this regard, as noted by DHS counsel, while the respondent has provided affidavits of support [from] his wife and a joint sponsor, his wife currently has no income and the joint sponsor neglected to submit supporting documentation for the reported income on his income tax return. As such, consistent with *Matter of Velarde*, 23 I&N Dec. 253 (BIA 2002), the DHS' opposition is sufficient to require a denial of the respondent's motion.[3]

While the appeals before this Court were pending, the United States Citizenship and Immigration Service (USCIS) approved the I-130 visa petition Smolyanyuk filed on Tadevosyan's behalf.

## II. Discussion

The BIA's "denial of a motion to reopen or reconsider" is reviewed "for abuse of discretion." *Salta v. I.N.S.*, 314 F.3d 1076, 1078 (9th Cir. 2002) (citing *Singh v. I.N.S.*,

---

[3] Tadevosyan later filed a motion to reconsider and a renewed motion to reopen. Among other things, Tadevosyan submitted the couple's 2007 income tax returns, showing that their adjusted gross income then was $18,947. After the government opposed the motions, the BIA denied them.

As noted, *see supra* n.1, we are dismissing the petition challenging that denial, as Tadevosyan has abandoned it.

213 F.3d 1050, 1052 (9th Cir. 2000)). "The BIA abuses its discretion when it acts 'arbitrarily, irrationally, or contrary to the law,'" and "when it fails to provide a reasoned explanation for its actions." *Movsisian v. Ashcroft*, 395 F.3d 1095, 1098 (9th Cir. 2005) (citations omitted). We hold that whether we read the BIA's decision as based purely on the DHS's opposition or as reaching the merits of the public charge issue, it abused its discretion in denying the motion to reopen.

## A.

At the time that the BIA rejected Tadevosyan's motion, it was addressing motions to reopen to pursue adjustment of status applications based on an unadjudicated visa petition filed by a United States citizen or lawful permanent resident spouse under the standards set forth in *Matter of Velarde-Pacheco*, 23 I. & N. Dec. 253 (BIA 2002) (en banc). *Velarde* replaced an earlier policy, established in *Matter of Arthur*, 20 I. & N. Dec. 475 (BIA 1992), uniformly to deny such motions. *Velarde*, 23 I. & N. Dec. at 255.

In *Velarde*, the BIA held that, even if an I-130 was still pending,

> a properly filed motion to reopen may be granted, in the exercise of discretion, to provide an alien an opportunity to pursue an application for adjustment where the following factors are present: (1) the motion is timely filed; (2) the motion is not numerically barred by the regulations; (3) the motion is not barred by *Matter of Shaar*, 21 I&N Dec. 541 (BIA 1996), or on any other

> procedural grounds; (4) the motion presents
> clear and convincing evidence indicating a
> strong likelihood that the respondent's
> marriage is bona fide; and (5) the Service
> either does not oppose the motion or bases its
> opposition solely on *Matter of Arthur* . . .

*Id.* at 256. The BIA noted that this decision did not "require Immigration Judges to reopen proceedings pending adjudication of an I-130 visa petition in every case in which the respondent meets all five of the aforementioned factors," and that there may be another valid reason for an Immigration Judge to deny the motion, even if these five factors are met. *Id.* at 257. Only the fifth *Velarde* factor is at issue here.

Most of the BIA members who did not join the majority opinion in *Velarde* understood its articulation of the fifth factor to require denial whenever the Service opposed the motion to reopen, unless solely based on *Arthur*. Board Member Pauley, in his dissent, joined by six other members of the Board, stated, "As I read the opinion, the Service is required only to register its opposition to the alien's motion. The Service is not required to state the ground(s) for its opposition." *Id.* at 268. He observed that, as a result, if DHS "wishes to preserve the status quo ante, it need only adopt a policy of filing a one-sentence 'Opposition' to motions to reopen that would previously have been barred under *Matter of Arthur*. . ." *Id.* at 268–69. In concurring with the result of the majority, Board Member Rosenberg emphatically rejected "the degree of deference extended to [DHS] under the fifth condition articulated in the majority opinion." *Id.* at 264. She refused to "believe that [DHS] opposition is an appropriate 'condition' that, as a rule, should result in denial of a motion to reopen," because the BIA's "role is to engage

in impartial and independent adjudications, not to rubberstamp the preferences of [DHS]." *Id.* She noted that the BIA "certainly may consider any substantive objections to reopening offered by the Service," but "such objections should not constitute an insurmountable barrier to granting a motion to reopen." *Id.*

The BIA as a whole later recognized that "the fifth factor in *Velarde* can be read to be dispositive, and it was so understood by at least some Board Members at the time." *Matter of Lamus-Pava*, 25 I. & N. Dec. 61, 64 (BIA 2009) (collecting citations). As a result, in applying *Velarde*, the BIA "accorded controlling weight to the opposition of the DHS in at least some cases." *Id.*

In 2008, after the BIA's third decision in this case, the Ninth Circuit rejected the notion that the BIA could properly accord dispositive weight to DHS's opposition to motions to reopen. *See Ahmed v. Mukasey*, 548 F.3d 768, 771–72 (9th Cir. 2008). *Ahmed* found persuasive the reasoning of the Second and Sixth Circuits concluding "that the DHS should not be able to block unilaterally a motion to reopen." *Id.* at 772 (citing *Melnitsenko v. Mukasey*, 517 F.3d 42, 52 (2d Cir. 2008); *Sarr v. Gonzales*, 485 F.3d 354, 363 (6th Cir. 2007)). Accordingly, *Ahmed* held "that when the DHS opposes a motion to reopen for adjustment of status, the BIA may consider the objection," and may deny the motion based on the *merits* of the DHS's objection, "but [it] may not deny the motion based solely on the *fact* of the DHS's objection." *Id.* (emphasis added); *see also Melnitsenko*, 517 F.3d at 52. Thereafter, in 2009, the BIA brought its own law into harmony with the Circuit court cases, by clarifying that the fifth *Velarde* factor should "not grant DHS 'veto' power over an otherwise approvable *Velarde* motion," and "the mere fact

of a DHS opposition to a motion, in and of itself, should [not] be dispositive of the motion without regard to the merit of that opposition." *Lamus*, 25 I. & N. Dec. at 64–65.

As we read the BIA's decision here, it is one of those in which the BIA improperly accorded controlling weight to the *fact* that DHS opposed the motion, without regard to whether the basis of that opposition was correct. The BIA recounted, in one sentence, the substance of the DHS's opposition. It did not analyze *at all* whether DHS's position in opposition to Tadevosyan's motion held water. Instead, the BIA accorded the *fact* of the objection dispositive weight in denying the motion, stating, "As such, consistent with *Matter of Velarde*, 23 I&N Dec. 253 (BIA 2002), *the DHS' opposition is sufficient to require a denial* of the respondent's motion." (emphasis added). This locution does not, as the government contends, indicate approval of the *substance* of DHS's arguments; rather, as the BIA described its own decision, it concluded that the fact of opposition, alone, required denial. Had the BIA meant to convey the meaning the government suggests, the reference to *Velarde*, and to "the DHS' opposition" as "sufficient to require a denial" would have been entirely pointless.

Bolstering our understanding of the BIA decision is the consideration that it was reached during the time period in which the BIA applied such a truncated approach to some motions to reopen to pursue adjustment of status applications. Further, the BIA did not mention, and made no attempt to apply, the motion to reopen standard, which requires only establishment of "prima facie eligibility for the relief sought." *See Young Sun Shin v. Mukasey*, 547 F.3d 1019, 1025 (9th Cir. 2008) (citing 8 C.F.R. § 1003.2(c)(1)). That the BIA did not do so indicates that it did not regard itself as obliged to

decide the motion on its merits, but simply accepted DHS's opposition as determinative.

We therefore conclude that the BIA abused its discretion by improperly relying on a de facto DHS veto as dispositive of Tadevosyan's motion to reopen.

## B.

The BIA's decision on the motion to reopen would fare no better were we to adopt the government's understanding of that decision. Had the BIA examined the merits of the motion and applied the correct standard, it could not have denied that motion, and its decision would still have been an abuse of discretion.

"A motion to reopen proceedings for the purpose of submitting an application for relief must be accompanied by the appropriate application for relief and all supporting documentation." 8 C.F.R. § 1003.2(c)(1). But the BIA does "not require[] a conclusive showing that, assuming the facts alleged to be true, eligibility for relief has been established." *Matter of L-O-G-*, 21 I. & N. Dec. 413, 418–19 (BIA 1996). Instead, it is "willing to reopen where the new facts alleged, when coupled with the facts already of record, satisfy us that it would be worthwhile to develop the issues further at a plenary hearing on reopening." *Id.* (internal quotation marks and citation omitted). In other words, a prima facie case for relief is sufficient to justify reopening, *Young Sun Shin*, 547 F.3d at 1025, and a "prima facie case is established when 'the evidence reveals a reasonable likelihood that the statutory requirements for relief have been satisfied,'" *Garcia v. Holder*, 621 F.3d 906, 912 (9th Cir. 2010) (quoting *Ordonez v. I.N.S.*, 345 F.3d 777, 785 (9th Cir. 2003)).

Applying that standard here, we begin with the statute and regulations regarding adjustment of status. Section 245(a) of the Immigration and Nationality Act (INA) provides that the Attorney General may adjust the status of certain aliens to "lawfully admitted for permanent residence if" various requirements are met, including that the alien "is admissible to the United States for permanent residence." INA §§ 245(a), (2). "In the case of any alien who has been placed . . . in removal proceedings . . . , the immigration judge hearing the proceeding has exclusive jurisdiction to adjudicate any application for adjustment of status the alien may file." 8 C.F.R. § 1245.2(a)(1)(i). In some circumstances, however, DHS counsel may ask the immigration judge to dismiss the removal proceedings and allow USCIS, rather than an immigration judge, to adjudicate an adjustment application. *See* United States Immigration and Customs Enforcement Principal Legal Advisor William J. Howard, *Memorandum re: Exercise of Prosecutorial Discretion to Dismiss Adjustment Cases* (Oct. 5, 2005).

An alien is inadmissible if "at the time of application for admission or adjustment of status, [the alien] is likely at any time to become a public charge." INA § 212(a)(4)(A). To establish that they are not inadmissible as public charges, most family-sponsored immigrants are required to submit an I-864 affidavit of support by their visa petitioner and, if the visa petitioner is unable to meet the income requirement, by "a joint sponsor," who does meet that requirement and agrees to support the immigrant. *See* INA §§ 212(a)(4)(C), 213A(f); 8 C.F.R. §§ 213a.2(c)(2)(iii)(A)(2), (C). The I-864 affidavit consists of a "legally enforceable" contract "in which the sponsor agrees to provide support to maintain the sponsored alien at an annual income that is not less than 125 percent of the Federal poverty line . . ." INA §§ 213A(a)(1)(A), (B).

The INA mandates that, to demonstrate their means to maintain income, sponsors must ordinarily submit with their affidavit of support a "certified copy" of their most recent Federal income tax return, but does not define what a "certified copy" is. *See* INA §§ 213A(f)(6)(A)(i), (B); *see also* 8 C.F.R. § 213a.2(c)(2)(i)(A) (specifying that either "a photocopy or an Internal Revenue Service-issued transcript" may be submitted).[4]

The regulations elaborate on this requirement, specifying that if, as Abrahamian did here, "the sponsor submits a photocopy, rather than an IRS transcript of the tax return(s)," "the sponsor *must* also submit as initial evidence . . . all Forms W-2 (if the sponsor relies on income from employment) and Forms 1099 (if the sponsor relies on income from sources documented on Forms 1099)." 8 C.F.R. § 213a.2(c)(2)(i)(A) (emphasis added). "The sponsor *may* also include as initial evidence: Letter(s) evidencing his or her current employment and income, paycheck stub(s) (showing earnings for the most recent six months[)], financial statements, or other evidence of the sponsor's anticipated household income for the" relevant year. *Id.* (emphasis added).

The government does not dispute that Abrahamian's income level, as shown in his declaration and tax return, was sufficient to support Tadevosyan at 125 percent of the Federal

---

[4] A tax return transcript is a document issued by the Internal Revenue Service that shows most information on an individual's tax return as it was originally filed, including any accompanying forms and schedules. *See* Internal Revenue Service, *Tax Return Transcripts* http://www.irs.gov/uac/Tax-Return-Transcripts (last visited Feb. 12, 2014).

poverty line. Instead, it contends here, as it did before the
BIA, that Tadevosyan failed to offer sufficient evidence that
he was not inadmissible as a public charge, because
Abrahamian did not submit enough documentation to support
the income he reported on his taxes.

This argument fails for a number of reasons. First,
Abrahamian swore under penalty of perjury in his affidavit
that his income was $22,211, an amount that indisputably is
sufficient to support Tadevosyan at the required level. As
Tadevosyan points out, the "facts presented in affidavits
supporting a motion to reopen must be accepted as true unless
inherently unbelievable." *Bhasin v. Gonzales*, 423 F.3d 977,
987 (9th Cir. 2005) (citing *Limsico v. I.N.S.*, 951 F.2d 210,
213 (9th Cir. 1991)). No finding was made that anything in
Abrahamian's affidavit was inherently unbelievable. Indeed,
at oral argument, the government could articulate no reason
that Abrahamian would have inflated his income—and
therefore his tax liability—when he filed his tax returns, let
alone any reason apparent in his affidavit or any other
document in the record to disbelieve that the document
submitted was a true copy of Abrahamian's tax return. Thus,
the sworn statements in Abrahamian's affidavit about his
income level, corroborated by the Federal tax returns, which
he attested under penalty of perjury were true copies, made a
sufficient prima facie showing to demonstrate that further
proceedings to develop the relevant facts—including
submission of additional corroborating documents, should the
immigration judge so require—would be worthwhile.

Further, to the extent the government contends that
Abrahamian should have submitted "letters, paycheck stubs,
or financial statements" evidencing his income,  such
materials may be submitted but are not mandatory. *See*

8 C.F.R. § 213a.2(c)(2)(i)(A); *see also* USCIS, Form I-864 Instructions 5 (rev. March 22, 2013) (specifically instructing, in bold, "You are not required to submit this evidence, however, unless specifically instructed to do so by a Government official").

That Abrahamian submitted a copy of his tax return rather than a transcript and did not submit copies of his actual W-2 forms with his affidavit did not defeat the prima facie showing that Tadevosyan was not a public charge. The regulations require that a motion to reopen "must be accompanied by the appropriate application for relief and all supporting documentation," 8 C.F.R. § 1003.2(c)(1)), and that the sponsor's W-2 forms be submitted to support an application for adjustment of status, 8 C.F.R. § 213a.2(c)(2)(i). But submission of W-2 forms are not a statutory requirement and may be waived by the adjudicator.

USCIS's adjudicators specifically are granted discretion to excuse the failure to file these forms, and need not request that the missing forms be submitted: USCIS's Field Manual for its adjudicators states,

> USCIS may also decide that a request for evidence is not necessary in a case in which the sponsor filed a photocopy, instead of a transcript, but forgot to submit Internal Revenue Service Forms W-2 or 1099. A decision not to request additional evidence will be proper if USCIS concludes that the evidence of record, taken as a whole, makes it reasonable to infer that the information on the tax return is true.

USCIS, *Adjudicator's Field Manual*, § 20.5(e), http://www.uscis.gov/laws/afm; *see also* USCIS Acting Dir. for Domestic Operations Michael Aytes, *Memorandum re: Consolidation of Policy Regarding USCIS Form I-864, Affidavit of Support* 12 (June 27, 2006) (repeating the same instruction and directing that, when deciding whether to request additional evidence, the adjudicator should consider that "the sponsor's statements about his or her employment and anticipated income are made under penalty of perjury," and "[t]hus, these statements on the Form I-864 are themselves evidence"). We can conceive of no reason why an immigration judge would not have the same flexibility as the USCIS adjudicators as to the required documentation. So, if reopening were granted, and the removal proceedings were not terminated to allow USCIS to adjudicate the adjustment application, an immigration judge would have the opportunity either to accept further evidence and hear testimony, or, alternatively, to conclude that the information in Abrahamian's tax return as already submitted was adequate, because Abrahamian's sworn declaration provided a sufficient basis to excuse the fact that he did not include his W-2 forms.[5]

---

[5] We note that, because of the amount of time that has passed since Abrahamian executed the affidavit of support, to process the application for adjustment of status now, an immigration judge may require submission of additional evidence regarding his present income level, including a copy of his tax return for the most recent year, regardless of whether the original submission was adequate at the time it was made. *See* 8 C.F.R. § 213a.2(a)(1)(v)(B) (providing that an immigration judge may, based on the facts of a particular case and "in the exercise of discretion," require the submission of such additional evidence "[i]f more than one year passes between the filing of the affidavit of support . . . and the hearing . . . concerning the intending immigrant's application for . . . adjustment of status"). If such additional evidence were required, the sufficiency of the affidavit of support would be determined based on the

The latter possibility has much to commend it here, as Abrahamian in fact *did* submit some relevant supporting evidence here.  His California Schedule W-2 CG, a copy of which was attached to the state tax return copy, reproduced in full the information from his W-2 forms.  DHS did not discuss this document in its opposition before the BIA or its answering brief here.[6]

Accordingly, Abrahamian's affidavit was sufficient to make the prima facie showing required when the BIA considers a motion to reopen.  Had the BIA addressed the issue on the merits—which, as we have explained, it did not—it would have been an abuse of discretion to deny the motion.

## C.

We note, finally, that given the fairly extensive statutory, regulatory, and case law material we have just analyzed with regard to the merits of the motion to reopen, if the BIA had indeed meant to address those merits, it did not fulfill its obligation to "provide a reasoned explanation for its actions." *Movsisian*, 395 F.3d at 1098.  "Due process and this court's precedent require a minimum degree of clarity in dispositive reasoning and in the treatment of a properly raised argument." *Su Hwa She v. Holder*, 629 F.3d 958, 963 (9th Cir. 2010).  In *Rodriguez-Lariz v. I.N.S.*, for example, where "the BIA merely repeated petitioners' claims and summarily dismissed

---

evidence submitted in response to the request for additional evidence, and not on the original submission.  *Id.*

[6] The government stated at oral argument that DHS had not noticed this document previously.

them without even purporting to engage in any substantive analysis or articulating any reasons for its decision," we granted the petition and remanded for further proceedings. 282 F.3d 1218, 1227 (9th Cir. 2002). The BIA opinion here, if read as addressing the merits of the motion to reopen, does no better. The BIA therefore would have abused its discretion for a third reason—lack of reasoned decisionmaking. More tellingly, the failure to provide any reasoned explanation confirms that the agency denied the motion because DHS objected, not because it considered DHS's objection on the merits and agreed with its reasoning.

## III.  Conclusion

For the reasons set forth above, Tadevosyan's petition for review of the BIA's March 27, 2008 order denying his motion to reopen is granted. We remand to the BIA for further proceedings in light of this decision.

**PETITION NO. 08-71791 IS GRANTED AND REMANDED. PETITION NOS. 07-75087 AND 08-73437 ARE DISMISSED.**