**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| ASAL NAZI, | Nos. 08-70851, 10-70980 |
| Petitioner, | Agency No. A076-715-598 |
| v. | |
| LORETTA E. LYNCH, Attorney General, | MEMORANDUM* |
| Respondent. | |

On Petitions for Review of Orders of the
Board of Immigration Appeals

Argued and Submitted September 2, 2015
Pasadena, California

Before: GRABER, RAWLINSON, and WATFORD, Circuit Judges.

Asal Nazi, a native and citizen of Iran, petitions for review of orders of the

Board of Immigration Appeals ("BIA") denying her motions to reopen her removal

proceedings to present evidence that she would be persecuted if returned to Iran.

**1.** The BIA did not abuse its discretion by denying Nazi's first motion to

reopen. In support of that motion, Nazi presented evidence that women are

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

systematically discriminated against in Iran.  As the BIA noted, much of this evidence was undated or predated her initial proceedings and, thus, failed to show that conditions in Iran had changed for the worse since Nazi initially sought relief from removal.  Moreover, the BIA concluded that, to the extent the evidence established changed country conditions, it "indicate[d] primarily a crackdown on the manner of dress for women and against activists" and was insufficient to establish that Nazi was prima facie eligible for relief.  Because Nazi made no showing at that time that she was an activist or would not comply with the dress code, and thus that there was some "*individualized* threat to persecute *her*," *Najmabadi v. Holder*, 597 F.3d 983, 992 (9th Cir. 2010), the BIA did not abuse its discretion in denying her first motion to reopen.

**2.**  The BIA abused its discretion, however, by denying her second motion to reopen.  In support of that motion, Nazi presented evidence that the Iranian government had recently cracked down on political dissidents, violently suppressed protests following the 2009 election, and detained several Westerners who had entered the country.  Evidence of the Iranian government's increased sensitivity to, and brutal repression of, political dissent following the 2009 elections was unavailable at the time of Nazi's original hearing, and it was material because it was "qualitatively different" from the evidence presented with her first

motion to reopen. *See Toufighi v. Mukasey*, 538 F.3d 988, 996 (9th Cir. 2008); *cf. Najmabadi*, 597 F.3d at 987.

That evidence was also sufficient to establish prima facie eligibility for relief. *Cf. Toufighi*, 538 F.3d at 996–97. In order to establish prima facie eligibility for relief, Nazi needed only to introduce evidence that "reveals a reasonable likelihood that the statutory requirements for relief have been satisfied," *Tadevosyan v. Holder*, 743 F.3d 1250, 1255 (9th Cir. 2014) (quoting *Garcia v. Holder*, 621 F.3d 906, 912 (9th Cir. 2010))—in particular, that she has a well-founded fear of future persecution on account of a protected ground, *see Malty v. Ashcroft*, 381 F.3d 942, 947–48 (9th Cir. 2004). The BIA determined that Nazi had not established prima facie eligibility for relief. In the BIA's view, her proffered evidence that she opposes the Iranian regime and has attended anti-regime protests in California, was insufficient to establish that she is already known to the Iranian government as a dissident or that she is a "'visible' opposition political activist and/or dissenter" or a member of "any Iranian opposition or pro-Western group in the United States."

Nazi introduced evidence, however, that the Iranian regime has killed, beaten, and detained ordinary protesters, not just leading dissidents or members of established, organized opposition groups. If Nazi were repatriated to Iran and

continued to voice her opposition to the regime publicly, there is some likelihood that she would face persecution on account of her political opinion, regardless of whether the regime is aware that she has previously participated in protests in the United States. In light of the evidence presented before the BIA, we conclude that there is a "reasonable likelihood" that, if reopening is granted, Nazi will be able to establish a well-founded fear of future persecution either by showing that there is a "pattern or practice" of persecuting anti-regime protesters in Iran or that, in comparison to political dissidents in Iran generally, she faces a greater risk of persecution as a public protestor, a woman, and a long-time resident of the United States. *See Wakkary v. Holder*, 558 F.3d 1049, 1060–63 (9th Cir. 2009); 8 C.F.R. § 1208.13(b)(2)(iii)(A).

**3.** Because we grant the petition in No. 10-70980, we need not reach Nazi's claim that the BIA's denial of her motions to reopen violated her Fifth Amendment right to due process of law on the ground that she was a minor at the time of her initial application, that she proceeded solely as a derivative beneficiary of her father's application, and that she lacked an adequate opportunity to present her own claims for relief.

**PETITION GRANTED in No. 10-70980; PETITION DENIED in No. 08-70851.**



**_Nazi v. Lynch_, Nos. 08-70851 and 10-70980**
**Rawlinson, Circuit Judge, concurring in part and dissenting in part:**

I concur in that portion of the disposition denying the petition for review of the denial of the first motion to reopen filed by Asal Nazi (Nazi).

I respectfully dissent from that portion of the disposition granting the petition for review of the denial of Nazi's second motion to reopen.

We review denial of the motion to reopen for an abuse of discretion. *See Go v. Holder*, 744 F.3d 604, 609 (9th Cir. 2014). Applying this standard, the decision of the Board of Immigration Appeals (BIA) "may only be reversed if it is arbitrary, irrational, or contrary to the law." *Id*. (citation and internal quotation marks omitted). In my view, this standard has not been met.

Nazi specifically contends that the BIA abused its discretion in holding that she failed to demonstrate individualized threats to her in Iran, and in holding that her political activities were limited to the extent that she would not have come to the attention of Iranian authorities.

The BIA concluded that Nazi's supplemental declaration reflected only that she had "been involved in an unspecified manner with other Iranians"; had "been attending protests by Federal Building in Los Angeles"; and had "attended a silent vigil elsewhere in the memory of a woman named Neda killed in Iran during the

1

unrest following the 2009 presidential elections." (internal quotation marks omitted).

The BIA noted that the photos submitted by Nazi included ones that appeared "to have been taken on a single unknown date at an unidentified location." The BIA observed that it was "unclear where and when the photos spelling out 'Neda' were taken." The BIA analyzed the photos as suggesting "at most" that Nazi attended one rally in Los Angeles and "perhaps a separate vigil" at an unknown location.

The BIA noted that Nazi submitted no evidence that anyone in Iran was even aware of her involvement in any protests in America. The BIA thus rejected Nazi's "characterization of herself as a 'visible' opposition political activist and/or dissenter." (citations omitted); *see Bhasin v. Gonzales*, 423 F.3d 977, 984 (9th Cir. 2005) (articulating that "an applicant must generally show an individualized, rather than a generalized, risk of persecution" to meet the prima facie eligibility requirement for a motion to reopen); *see also Najmabadi v. Holder*, 597 F.3d 983, 990 (9th Cir. 2010) (denying challenge to denial of motion to reopen because substantial evidence supported the BIA's conclusion that the petitioner's evidence that she was a "westernized woman" and a political dissenter to the Iranian regime did not demonstrate an individualized threat but rather "conditions affecting the

2

population at large").

The BIA's view of this evidence was not "arbitrary, irrational, or contrary to law." *Go*, 744 F.3d at 609 (citation omitted). Although the BIA could have determined that the submitted evidence presented a reasonable likelihood that Nazi would suffer persecution in Iran, it was not compelled to do so. *See Najmabadi*, 597 F.3d at 986 (recognizing the "broad discretion to grant or deny" a motion to reopen).

It is inappropriate for us as a reviewing court to re-weigh the evidence presented to the BIA and reach a different conclusion. As our colleague Judge Farris so eloquently stated: "[The majority] would re-try. I am content to review." *Li v. Ashcroft*, 378 F.3d 959, 964 n.1 (9th Cir. 2004).

I respectfully dissent.