NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

APR 21 2022

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| RAFAEL OLIVEIRA VASCONCELOS, Petitioner, v. MERRICK B. GARLAND, Attorney General, Respondent. | No. 18-71574 20-70295 Agency No. A093-138-181 MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted February 17, 2022[**]
San Francisco, California

Before: McKEOWN and W. FLETCHER, Circuit Judges, and BENNETT,[***] District Judge.

Petitioner Rafael Oliveira Vasconcelos ("Oliveira") seeks review of two decisions of the Board of Immigration Appeals ("BIA"). In Case No. 18-71574 (the

---

[*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]   The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

[***]  The Honorable Richard D. Bennett, United States District Judge for the District of Maryland, sitting by designation.

"First Petition"), Petitioner contests the BIA's denial of his application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). In Case No. 20-70295 (the "Second Petition"), Petitioner challenges the BIA's denial of his motion to reopen proceedings in light of the Supreme Court's decision in *Pereira v. Sessions*, 138 S. Ct. 2105 (2018). We have jurisdiction under 8 U.S.C. § 1252, and we deny both petitions for review.

## I.    The First Petition

Oliveira's first petition arises from the BIA's denial of asylum, withholding, and CAT protection. Oliveira is a Brazilian citizen who overstayed his B-2 visitor visa in 2001. In 2003, Oliveira agreed to become an informant for Immigration and Customs Enforcement ("ICE"), and helped the agency investigate another Brazilian immigrant known as "Salsicha" in exchange for a temporary work permit. When the investigation was complete, ICE declined to renew Oliveira's permit and placed him into removal proceedings. Concerned that Salsicha would retaliate against him in Brazil, Oliveira applied for asylum, withholding of removal, and CAT protections. The BIA denied all three forms of relief.

To qualify for asylum, "the applicant must show that '(1) his treatment rises to the level of persecution; (2) the persecution was on account of one or more protected grounds; and (3) the persecution was committed by the government, or by forces that the government was unable or unwilling to control.'" *Plancarte Sauceda*

2

*v. Garland*, 23 F.4th 824, 832 (9th Cir. 2022) (quoting *Baghdasaryan v. Holder*, 592 F.3d 1018, 1023 (9th Cir. 2010)) (emphasis omitted); *see* 8 U.S.C. § 1101(a)(42)(A). The applicant's fear must be "subjectively genuine and objectively reasonable." *Lolong v. Gonzales*, 484 F.3d 1173, 1178 (9th Cir. 2007). Oliveira subjectively fears that Salsicha has learned of his cooperation with ICE and would persecute him upon his return to Brazil. This fear rests on two anonymous, threatening phone calls that his family received eleven years ago. However, Oliveira offers no evidence that these calls were from Salsicha or that Salsicha has become aware of his cooperation with ICE. Additionally, he acknowledges that he never gave Salsicha his name, his phone number, or any other identifying information. Accordingly, the BIA's finding that Oliveira's fear was too speculative to sustain an asylum claim is supported by substantial evidence. As Oliveira fails to meet the more lenient standard required to sustain an asylum claim, he "necessarily fails to satisfy the more demanding standard for withholding of removal." *Davila v. Barr*, 968 F.3d 1136, 1142 (9th Cir. 2020).

To qualify for relief under the Convention Against Torture, an applicant must show that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." *Hamoui v. Ashcroft*, 389 F.3d 821, 826 (9th Cir. 2004) (quoting 8 C.F.R. § 208.16(c)(2)); *Khup v. Ashcroft*, 376 F.3d 898, 907 (9th Cir. 2004) (requiring 51% chance of torture). The applicant must demonstrate a particularized and individualized likelihood of torture; "generalized evidence of

3

violence and crime" will not suffice. *Delgado-Ortiz v. Holder*, 600 F.3d 1148, 1152 (9th Cir. 2010). Oliveira's CAT claim is no less speculative than his asylum claim: He asserts that Salsicha would torture him, and that this torture would occur with the consent or acquiescence of the government. However, he fails to offer evidence that Salsicha is aware of his work as an ICE informant, that Salsicha is connected to the Brazilian government, or that government officials would otherwise acquiesce in his torture. Accordingly, the BIA's denial of Oliveira's CAT claim is supported by substantial evidence.

## II.     The Second Petition

Oliveira's second petition arises from the BIA's recent denial of his motion to reopen proceedings in order to allow him to apply for cancellation of removal. Motions to reopen are heavily disfavored, as "every delay works to the advantage of the deportable [immigrant] who wishes merely to remain in the United States." *INS v. Doherty*, 502 U.S. 314, 323 (1992); *accord INS v. Abudu*, 485 U.S. 94, 108 (1988) (emphasizing potential for an "endless delay of deportation" (quoting *INS v. Jong Ha Wang*, 450 U.S. 139, 143 n.5 (1981)). "The BIA has broad discretion, conferred by the Attorney General, 'to grant or deny a motion to reopen.'" *Kucana v. Holder*, 558 U.S. 233, 250 (2010) (quoting 8 C.F.R. § 1003.2(a)). Accordingly, the denial of a motion to reopen is reviewed for an abuse of discretion, *Rubalcaba v. Garland*, 998 F.3d 1031, 1035 (9th Cir. 2021), and may only be reversed if the Board acts

"arbitrary, irrational, or contrary to the law" or if the BIA "fails to provide a reasoned explanation for its actions." *Tadevosyan v. Holder*, 743 F.3d 1250, 1252–53 (9th Cir. 2014) (citation omitted).

Oliveira's motion is predicated on the Supreme Court's decision in *Pereira v. Sessions*, which renders him eligible to seek cancellation of removal. 138 S. Ct. at 2110. In light of *Pereira*, Oliveira argues that the defects in his 2008 NTA deprive the Immigration Court of jurisdiction over his removal proceedings altogether. However, *Pereira* only addressed the effect of a defective NTA on the stop-time rule and nowhere discussed the jurisdiction of the Immigration Court. Moreover, because Oliveira was served a subsequent Notice of Hearing containing the requisite time and date information following his defective NTA, this subsequent notice forecloses any argument that the Immigration Court lacked jurisdiction over the proceedings. *See Karingithi v. Whitaker*, 913 F.3d 1158, 1159 (9th Cir. 2019).

Oliveira also contends that the BIA abused its discretion by finding that he had failed to establish prima facie eligibility for cancellation of removal. The BIA may deny a motion to reopen proceedings if "the movant has not established a prima facie case for the underlying substantive relief sought." *Abudu*, 485 U.S. at 104. A prima facie case does not require "a conclusive showing . . . that eligibility for relief has been established." *Tadevosyan v. Holder*, 743 F.3d 1250, 1255 (9th Cir. 2014) (quoting *Matter of L-O-G-*, 211 I. & N. Dec. 413, 418–19 (BIA 1996)). "A party

5

demonstrates prima facie eligibility for relief 'where the evidence reveals a reasonable likelihood that the statutory requirements for relief have been satisfied.'" *Kaur v. Garland*, 2 F.4th 823, 833 (9th Cir. 2021) (quoting *Salim v. Lynch*, 831 F.3d 1133, 1139 (9th Cir. 2016)).

An applicant for cancellation of removal must show that a qualifying relative would suffer "exceptional and extremely unusual hardship" upon the applicant's removal. 8 U.S.C. § 1229b(b)(1)(D). Exceptional and extremely unusual hardship is a "very demanding" standard, *Garcia v. Holder*, 621 F.3d 906, 913 (9th Cir. 2010), requiring the petitioner to establish "evidence of harm . . . substantially beyond that which ordinarily would be expected to result from [their] deportation." *Ramirez-Perez v. Ashcroft*, 336 F.3d 1001, 1006 (9th Cir. 2003) (quoting *Matter of Monreal-Aguinaga*, 23 I. & N. Dec. 56, 56 (BIA 2001)). In support of his motion to reopen proceedings, Oliveira stated that his wife suffers from "debilitating anxiety," that she was hospitalized following a severe anxiety attack after Oliveira met with ICE, that she is taking anxiety medication, and that Oliveira helps with her medical needs. Anxiety over a relative's meeting with immigration officials is precisely the kind of hardship "which ordinarily would be expected to result from . . . deportation." *Id.* Accordingly, the BIA did not abuse its discretion by concluding that these conditions, "[w]hile not insignificant . . . do not establish prima facie exceptional and extremely unusual hardship."

In light of the foregoing analysis, the BIA did not err by failing to explicitly address Oliveira's requests for equitable tolling or *sua sponte* reopening. Although the BIA abuses its discretion if it "fails to provide a reasoned explanation for its actions," *Tadevosyan v. Holder*, 743 F.3d 1250, 1252–53 (9th Cir. 2014), the BIA concluded that Oliveira's motion to reopen proceedings was likely to fail on the merits even if the motion was timely, as he did not demonstrate prima facie eligibility for cancellation of removal. Accordingly, equitable tolling or *sua sponte* reopening would not impact the outcome of this case, and remand to the agency on the issue of timeliness is inappropriate.

**PETITIONS DENIED.**